CORNELIUS TOOHEY, BY HIS NEXT FRIEND, HENRY TOOHEY, AND HENRY TOOHEY, INDIVIDUALLY, RESPONDENTS, v. FRANKLIN WEBSTER, APPELLANT.

Submitted March 15, 1922—Decided June 19, 1922.

1. Plaintiff, a boy thirteen years of age, was caddying on a golf course for a player engaged in a twosome on the third hole, while defendant was engaged in a threesome on the fourth. On this course the third hole is laid out at an angle to the fourth, the third green being much nearer the line of the fourth hole than its tee is, and this third green is only eight feet away from the midway bunker on the fourth fairway. Defendant, driving from the fourth tee, had sliced his ball into the rough over towards the third fairway, and as he got ready for his second shot, plaintiff's employer holed out on the third green and started for the fourth tee, while plaintiff started across towards the midway bunker on the fourth fairway, as was customary, to await his employer's next drive, and had taken only two or three steps when he was struck in the eye by defendant's ball on his second shot. Defendant testified that he called "fore" before addressing the ball; others testified that they heard no such warning. *Held*, that defendant was under a duty to use reasonable care to observe whether there were any persons in the general direction of his drive who might be endangered thereby, and if so, to see that they were adequately warned, in order that they might be on guard, and that the question of defendant's negligence was properly left to the jury.

2. Whether under such circumstances the plaintiff was guilty of contributory negligence was also a jury question.

3. Whether plaintiff assumed the risk of the injury which he sustained was also properly submitted to the jury.

On appeal from the Essex County Circuit Court.

For the appellant, *Heine, Bostwick & Bradner.*

For the respondents, *Wolber & Gilhooly.*

The opinion of the court was delivered by

ACKERSON, J. This action was brought in the Essex County Circuit Court to recover damages for personal injuries sustained by Cornelius Toohey, a boy thirteen years of

age, while acting as a caddie on the golf course of the South Orange Field Club, and for the consequential damage sustained by his father as the result of such injury by reason of the boy being hit in the right eye by a golf ball driven by the defendant while playing on said course. The jury returned a verdict in favor of both plaintiffs, and from the judgment entered thereon defendant appeals upon two grounds, viz., the refusal of the trial judge to nonsuit the plaintiffs, and his refusal to direct a verdict in favor of the defendant.

It appears from the testimony to be uncontradicted that the golf course in question is cramped for space, with the result that some of the holes are unusually close together, and this is particularly true of the third and fourth holes. Both run in the same general direction. The third green is one hundred and fifty-nine yards from the third tee, and the fourth green is two hundred and five yards from the fourth tee, and the third putting green is almost opposite a midway bunker on the fairway of the fourth hole, and this bunker is only about eight feet from the nearest edge of the third green, so that players holding out on the third green have to walk back almost in the line of fire of the fourth hole, a hundred yards or so to the fourth tee, and their caddies inevitably walk directly across to the back of this bunker on the fourth fairway, opposite the third green, so as to watch and be ready when their players drive from the fourth tee.

At the time of the accident the defendant was playing in a threesome on the fourth hole, and the plaintiff, Cornelius Toohey (who, for the purpose of convenience, will be referred to hereafter as the plaintiff), was caddying for a player who was engaged in a twosome at the third green. The defendant had topped his ball on his drive from the fourth tee and at the same time sliced his drive so that the ball landed in the rough, decidedly to the left, at about fifty yards, so far, in fact, that the jury might properly find that he was obliged to play practically over the third green, or very near thereto, in order to aim for the fourth green. As he was about to make his second shot the players on the third green had just holed out and the plaintiff took his player's putter and

handed him a driver for the fourth hole, and as this player started for the fourth tee, plaintiff started for the above mentioned bunker, opposite the third green and midway of the fairway of the fourth hole, and had taken two or three steps and was somewhere near the edge of the third green, when he heard the word "fore" and was instantly hit in the right eye by the ball from defendant's second shot.

Defendant rests his argument for reversal upon three points, viz., that the defendant was not negligent; that the plaintiff was guilty of contributory negligence and that the plaintiff assumed the risk of being struck by a golf ball.

In determining whether the defendant was negligent we must bear in mind that the course is cramped, there being only about eight feet between the edge of the third green and the midway bunker on the fourth fairway; that defendant at the time of making the stroke in question was in the rough to the left of the fourth fairway and in the rear of the plaintiff, at a distance variously estimated at from thirty-five to seventy-five yards away. The defendant was endeavoring to get to the fourth hole, and there was competent evidence from which the jury might properly find that the third green was between him and the fourth green, and one of defendant's witnesses testified that the plaintiff was not more than four or five feet to the left of a direct line from defendant's position to the fourth green and that plaintiff was in the line of defendant's play, and both players in the twosome were still on the third green. With these people out in front of him and with the knowledge that his ball might deviate from the intended course, defendant attempted a shot in the direction of the fourth hole, intending to loft his ball over the bunker on the fourth fairway and over the heads of all who might be between him and the bunker; but instead of a lofted shot the ball carried low and curved to the left. Under such circumstances the defendant was under a duty to use reasonable care before delivering his stroke, to observe whether there were any persons in the general direction of his drive who might be endangered thereby, and if so, to see that they were adequately warned. Defendant testified that he

called "fore" before delivering the stroke in question and just after looking ahead to see what the situation was, and that he did not see the plaintiff until after he, the defendant, had struck the ball, and that when he saw the ball going in plaintiff's direction he called "fore" again very loud. On the other hand all the other witnesses who were on the course testified that they saw the boy either on the third green or between it and the aforesaid bunker, as defendant made his shot, and three of them who were at or near the third green did not hear any call of "fore" or other warning until just as the plaintiff was struck. This raised an issue of fact as to whether adequate and timely warning was given to the plaintiff and, therefore, the question of defendant's negligence was properly left to the jury.

We have next to consider whether the boy was guilty of contributory negligence. He was thirteen years of age at the time of the accident and was rightfully on the golf course and in the exercise of a duty which required him to be where he was at that time. The defendant, as already stated, was not on the fourth tee when he made the shot in question, but was in the rough to the left of and at an angle to the fairway of the fourth hole, and in the rear of the plaintiff at a distance variously estimated at from thirty-five to seventy-five yards away, and under such circumstances we think that the boy had a right to expect that the defendant would not attempt to drive his golf ball so close to the direction in which he, the plaintiff, was proceeding as to put him in danger, without giving him some audible warning in time for him to protect himself. If warning was given so that the boy heard it or should have heard it in the exercise of due care under the circumstances then existing, in time to avoid being hit, then the accident was partly at least the result of his own negligence; but if no warning was given, or was not given in time, or was given in such a way that the plaintiff did not hear it and would not have heard it by the exercise of reasonable care, then it was at least a question for the jury to say whether the plaintiff was negligent. As already related, the plaintiff testified that he heard no warning until just as the

ball struck him, and in this he is supported by two other witnesses. Therefore, the question of contributory negligence was clearly for the jury.

This brings us to the remaining question, as to whether the plaintiff assumed the risk of being struck by a golf ball while acting as a caddie on the golf course.

Having already decided that it was the duty of the defendant to give audible and timely warning of his intended play, it naturally follows that if the defendant failed to give this warning in a proper manner before making his shot he was guilty of a breach of duty and it cannot be seriously contended that under such circumstances the plaintiff assumed, as a matter of law, the risk of injury resulting from the defendant's failure to perform a duty upon which the plaintiff had the right to rely. In such a situation the question of the assumption of risk was for the jury. *Albanese v. Central Railroad of New Jersey,* 70 *N. J. L.* 241.

The judgment will be affirmed.

WILLIAMS, J. (dissenting). The clear and undisputed facts from the testimony are as follows:

The third hole of the golf course of the South Orange Field Club is one hundred and fifty-nine yards long and approaches the fourth hole from the left; the fourth hole is two hundred and five yards long and has a bunker across the fairway at about the middle, and the green of the third hole is about opposite this bunker—to the left of it—and practically adjoins the fairway of the fourth hole.

On September 21st, 1919, the defendant, with two friends, was playing in a threesome; he was an experienced player, having played for more than twenty years; he was the last to drive from the fourth tee and topped his ball, which was driven about sixty yards in the rough, a little to the left of the centre line of the fairway and about forty-five yards from the third green.

A twosome had just holed out on the third green, one of whom was the employer of the caddie, who is the plaintiff in

this suit; this caddie was only thirteen years old at the time and had been caddying about three years; he was a regular caddie on the course and was accustomed to be on the course from eight A. M., not only Saturdays and Sundays, but other days, and on Saturdays and Sundays walked over the course four or five times a day; his testimony showed also that he was thoroughly familiar with the course and its peculiarities and dangers, and that players on the fourth tee would not pay any attention to the people on the other tees while playing this hole. He also testified that he knew someone was playing on the fourth hole when his party was playing the third, for there had been a threesome playing ahead of them at every hole; after his employer had holed out he took the driver from his bag and handed it to him, and then started to walk toward the bunker on the fourth fairway, and had taken about three steps off the green when he heard a cry of "fore" and was hit in the eye by a ball; he did not see the defendant or his party playing on the fourth hole; he was standing with his back to defendant and the other players on the fourth hole; he heard no warning cry of "fore" except just as he was hit, and he saw the defendant for the first time just after he was hit. His companion caddie testified that at the time of the accident he was at the bunker laying down his bag; he heard someone shout "fore" from the direction of the fourth tee and heard the plaintiff shout and he turned around; the plaintiff was *just about three steps off the green.*

Mr. Mittlesdorf, who was the partner of Mr. Lentz, for whom the plaintiff was caddying, testified that the plaintiff at the time he was hit was in between the third green and the bunker on the fourth fairway.

'The defendant testified that just before he took his second shot from the rough, he looked up and saw no one in his line of play on the fairway to the fourth hole except a few caddies at the end of the bunker; he then looked down to address his ball, and after striking it, he looked up and saw a boy, who proved to be the plaintiff, deliberately walking across the fairway to the line of flight of his ball; he called "fore" as

loudly as he could, and the plaintiff testified that he heard this just as he was struck.

The defendant also testified that before he addressed his ball he called "fore," and this is corroborated by the testimony of his two companions, but the plaintiff and his companion caddie and another witness testified that they did not hear this preliminary cry of "fore." Up to this point the facts are clear and undisputed. It has been held in this court that when an engineer and fireman on a locomotive testify that the whistle was blown and bell rung while approaching a crossing, and others testify that they heard no such signals, it is a question for the jury to decide, and this would seem to imply that the facts in this case as to the calling of "fore" before addressing the ball, would also be for the jury. But I do not base my dissent on that ground. I base it upon the ground that the plaintiff assumed the risk of the injury which he sustained with full knowledge on his part of the character of the risk; that he was guilty of contributory negligence and was a trespasser on the fairway of a hole which his employer was not playing at the time.

Although the plaintiff was of tender years, his experience on the links, as shown by his testimony, fitted him to understand the risks of the game. There are certain risks which a caddie does not assume; we have heard of the player who, in a fit of rage after a bad shot, has thrown his club away in disgust without regard to the safety of anyone standing near him; this is not a risk a caddie assumed, but he does assume the risk of injuries incident to the playing of the game, and it is in his knowledge that the game is played with hard balls which are driven with great speed for varying distances and in unexpected directions, not always within the control of the player.

Although the game of golf has been played for many years by hundreds of thousands of our citizens, serious accidents have been so few that there is very little in the books to help the court. Other games where a hard ball is propelled with great speed by a wooden club are polo and baseball. The judge below, upon the motion for a nonsuit, speaks of a case

in Pennsylvania, "a few years ago"—he does not give us the citation—where a boy was a spectator at a polo game across a road from where the game was being played; the ball did not go out of the field, but the players, in order to reach it, rushed towards the side, and one of the horses took the bit in his mouth and ran across the road and struck the boy. The facts in this case are not parallel with the case at bar; to make it so, the boy would have taken several steps within the bounds of the field without looking, and been struck by the ball hit by a player within the bounds of the field, while the boy was a trespasser.

A similar case in a baseball game would be when a spectator, standing near the line from third base to the home plate, deliberately walked on the diamond as the batter was ready to strike, and was hit by the batted ball. He would also be a trespasser, and would certainly be guilty of negligence, especially if he did not take ordinary care to look around.

In the case of *Central Railroad of New Jersey* v. *Isaac Moore,* 24 *N. J. L.* 824, decided in this court, it is held: "A plaintiff suing for an injury, caused by the negligence of the defendant, will not be entitled to recover, if his own negligence contributed to the injury in such a way that if he had been guilty of no negligence, he would have received no injury by that of the defendant.

"The law does not in such case require of the plaintiff the greatest possible caution. The caution required is the ordinary care which a prudent person would take under such circumstances. * * * More vigilance and care are required in crossing a railroad track traveled by trains of a high, uncontrollable rate of speed than in crossing an ordinary highway.

"Where the facts are clear and undisputed, and show a want of ordinary care on the part of the plaintiff, the question is for the court to decide.

"Where the evidence of the plaintiff shows, without contradiction, a want of ordinary care on his part, it is the duty of the court when requested to order him to be nonsuit * * *."

In *Runyon* v. *Central Railroad of New Jersey*, 25 *N. J. L.* 556, it is held:

"If by the exercise of ordinary skill and care the plaintiff could have avoided the injury, or if his conduct contributed to produce it, he is not entitled to recover, even though the defendants were also guilty of negligence," citing *Moore* v. *Central Railroad of New Jersey*, 24 *N. J. L.* 268.

In the case at bar the facts are clear and undisputed showing a want of ordinary care on the part of the plaintiff. He had had three years of experience; he knew that someone was playing on the fourth hole when his party was playing the third; after giving his employer his driver he could have followed him along the path to the fourth tee in safety, but he preferred to save that distance and walked across a known danger spot to reach the safety of a bunker on the fairway of a hole which his employer was not playing and on which he had no right to be; he was not in any sense an invitee, but was a trespasser until his own party began to play from the fourth tee. He did not look to see if there was any danger; if he had looked to the fourth tee, as was his duty to protect himself, he could not have failed to see the defendant with his two companions standing in a direct line between him and the fourth tee and only forty-five yards away; he was standing with his back to the defendant and the other players on the fourth hole; he was in a safe place when the defendant looked down to address his ball, for he testifies that he had taken three steps off the green when he was hit, and the time consumed by defendant in addressing his ball, bringing the club back, coming down with the club and the time consumed by the ball in its flight, was much more than was necessary for him to take these three steps; his companion caddie also testified that plaintiff was *just about three steps off the green* when he was hit, and the employer of his fellow-caddie testified that at the time he was hit he was in *between the third green and the bunker on the fourth fairway*.

When a hole is in play everyone, except the players and their caddies and the players in front who are out of range,

is a trespasser who goes on the fairway; the plaintiff in this case was not an invitee and had no right on the fairway at the time, and as soon as he stepped from the green to the fairway he was a trespasser.

In the Runyon case above cited, the plaintiff, *without looking* or paying attention, went upon the railroad track in front of a swiftly approaching train. In the case at bar the plaintiff, knowing it to be a dangerous place and that players were behind him, *without looking,* walked into the line of play where a golf ball was likely to pass at great speed and could not be stopped.

The judge below erred in refusing to direct a verdict for the defendant on the ground of assumption of risk and contributory negligence, and the judgment should be reversed.

*For affirmance* — The Chancellor, Chief Justice, Swayze, Trenchard, Parker, Bergen, Minturn, Black, Katzenbach, White, Gardner, Ackerson, Van Buskirk, JJ. 13.

*For reversal*—Heppenheimer, Williams, JJ. 2.