## Brosko et al. v. Hetherington

*C. William Kraft, Jr.,* for plaintiffs; *Geary & Rankin,* for defendant.

MACDADE, J., November 5, 1931.—The present proceedings were instituted by the minor plaintiff and his father to recover damages occasioned by the minor plaintiff's loss of an eye, caused by a sliced golf ball striking said organ of vision. Nicholas Brosko, the minor, was employed as a caddy on June 30, 1925, at the golf course of the Delaware County Golf Course (formerly the Aronimink Course) in Drexel Hill, Delaware County, Pa. While so engaged as a caddy he was struck in the left eye by a golf ball driven by the defendant from the first tee. The minor was caddying for one person of a foursome (four players), one of whom was the defendant. However, he was not attending this defendant, but a player thereof who teed off before the defendant attempted to do so, as hereinafter related.

The jury found in favor of the plaintiffs, awarded $625 to the minor and $435 to his father, very reasonable verdicts indeed.

The defendant has filed motions for judgment n. o. v. (having presented a written point at the trial for binding instructions) and for new trials.

Relative to the motion for judgment "non obstante veredicto," we must give these plaintiffs, considering the verdicts of the jury were with them, every reasonable intendment and benefit of the facts proven by them and every inference to be reasonably drawn from the same and reject any and all adverse testimony of this defendant.

The minor plaintiff testified that, on June 30, 1925, when he was eleven years of age, he went to the golf course and, after waiting for some time, was engaged as a caddy, being assigned to his employment by the caddy master of the golf course, with no direct contractual relation with the defendant or employment by him, except such as may be inferred by said assignment of caddying for a third person who was in the same foursome with the defendant. Evidently this boy was engaged by the caddy master. Prior to that day he had never acted as caddy, though he had been to the course to seek employment as a caddy on several other occasions. He testified that he, Buddy Feehan, Billie Feehan and a fourth boy were assigned by the caddy master as caddies for the members of a foursome of which the defendant was one; that he took a position about twenty-five feet to thirty feet to the right of the first tee and about six feet in front of it before the members of his foursome began to drive; that the golfer for whom he was caddying, who was not the defendant, drove his ball, and that he watched the course of the ball until it came to rest and fixed its position; and

then, as he was turning to look again toward the first tee, he was struck in the left eye by the ball driven by the defendant and as the former's head was turning.

Buddy Feehan testified that at the time of this occurrence he was twelve years of age and went to the golf course in company with his cousin Billie and the minor plaintiff, and these three, together with the fourth boy, were assigned as caddies to the foursome. That the four boys went toward the first tee and took the position assigned to them by the club professional. He further testified that the defendant swung once at the ball and missed it and on the second stroke hit the ball in such a manner as to cause it to slice or veer very sharply to the right, striking the minor plaintiff in the eye. Buddy Feehan was at the time caddy for the defendant.

Billie Feehan testified that he accompanied his cousin Buddy and the minor plaintiff to the golf course on the day of this occurrence and that he was at that time nine years of age. That he was one of the caddies for the foursome of which the defendant was a member. He was unable to state for which man he was caddy.

Vincent O'Donnell, a golf professional of many years' standing and experience, testified that he was the golf professional and superintendent of the golf course on this date. He testified that he had been engaged in the game of golf since 1896, acting first in the capacity of caddy, then caddy master and thereafter as golf professional at a number of leading golf clubs, and his qualifications were conceded to be the best by one Andy Campbell, golf professional, who testified as an expert for the defendant. O'Donnell further testified that on this date, prior to the time of this occurrence, he designated the extreme back tee as the proper place from which the players should start. He testified that the minor plaintiff was employed as a caddy on that afternoon, but was unable to say to whom he had been assigned. He testified that, under the practice existing, the caddies were assigned to the players by the caddy master and that the caddies were to be paid directly by the players for their services. He further testified that he was at the first tee for some time prior to the accident, and as the defendant was driving he was just walking away from the tee with his head turned in the direction of the tee in order to observe the course of the ball being driven therefrom. He had placed the group of caddies, of which the minor plaintiff was one, in a position to the right of the tee and slightly in front of it.

He also testified and exhibited to the jury the manner in which the defendant, Hetherington, struck the ball. His testimony and actual demonstration showed that the defendant twisted his body sharply and pulled the club away from the ball and so struck the ball with the tip of the club instead of upon the face, thus causing it to take an extremely sharp curve or slice to the right. Further, he corroborated the testimony of Buddy Feehan that the defendant missed the ball entirely on his first attempt to drive it from the tee and that no warning of any kind was given by the defendant before or after he struck the ball.

The defendant introduced testimony, consisting of the defendant and two of his golfing companions, Daniel McPhail and William C. Filz. McQuillen, the other member of the foursome, was absent. The defendant also called as an expert witness one Andrew Campbell, a golf professional.

The defendant testified in person that he had been playing golf since 1925, and that this occasion was his first visit to this course. He denied that the minor plaintiff and the two Feehan boys were caddies for his foursome. He testified that he never took lessons from a golf professional in an endeavor to learn the game. He also testified that he did not see any caddy near the bushes and did

not see the minor plaintiff until he was on the ground. The defendant admitted that he gave no warning.

Daniel McPhail's attitude was to corroborate the defendant's testimony that the Feehan boys and the minor plaintiff were not employed by the defendant's foursome. This witness also testified that he saw people standing by the bushes where the plaintiff was struck.

William C. Filz testified that he was not watching the defendant when he drove; that he was conscious there were people in and among the bushes where the plaintiff was struck; that he is uncertain whether the minor plaintiff, the two Feehan boys and the fourth boy were caddies for his foursome or not.

Andrew Campbell, a golf professional, testified as an expert that the ball would not have sliced had the defendant hit it as Vincent O'Donnell described the striking, but had the ball been hit on the end of the club it would have gone at right angles. He further testified that slicing of the ball in this manner is a common occurrence and that people are frequently struck by golf balls on the course.

The trial judge (MacDade) charged the jury that the laws of ordinary care and of ordinary negligence applied to the case and submitted to the jury as a question of fact (1) (a) whether the boy had assumed the risk of being struck, and (b) contributed to the accident by his negligence; (2) whether it was the duty of the defendant to give warning of his intention to strike or drive the ball, and (3) whether the defendant was negligent in failing to strike the ball properly in attempting to drive it.

The reasons assigned for a new trial may be epitomized into such salient questions involved as follows:

1. Did the court err in submitting to the jury the question of the defendant's negligence in assuming an improper posture before driving the ball and in driving or striking it in an improper manner?

2. Did the court err in submitting to the jury the question of the defendant's negligence in failing to give the minor plaintiff warning before he struck his ball?

3. Did the court err in submitting to the jury the risk of injury by reason of plaintiff's employment as a caddy for another player, and did his negligence contribute to the accident?

In considering the first question involved, it is of utmost importance to recall the oral testimony and the physical demonstration given by Vincent O'Donnell, the professional, in describing the manner in which the defendant struck the ball. O'Donnell's qualifications as an expert were of the highest type and were conceded by the defendant's expert. O'Donnell not only testified as an expert, but, in addition thereto, had a peculiar advantage of having been present and having seen the defendant miss his first swing entirely and in his second swing twist his body sharply and pull the club away from the ball so the ball was struck by the tip of the club instead of the face of the club, by which the ball should have been struck. It is unquestioned that the striking of the ball with the tip of the club was the cause of the ball's veering sharply or slicing to the right.

Golf, from its very nature, is a game requiring some skill. It must be remembered that the driver or brassie is a club with a long handle and a solid wooden head reinforced and weighted with lead; the golf ball is a small ball of tightly wound rubber, covered with guttapercha, and is so constructed that it attains a terrific velocity upon being struck. It is readily seen that a player, when striking the ball, sets in motion certain forces which are capable of causing great damage if improperly directed. The fact the defendant improperly directed the

force in this case by an improper posture and an incorrect swing appears directly from the testimony of O'Donnell and from the physical evidence that the ball did take an improper course. It must be conceded that the game of golf is no different from any other game or occupation in which man puts in motion a force likely to cause injury, and that if he intentionally puts such a force in motion, he must use ordinary care to put it properly in motion and in a direction in which it will cause no injury to another. A clear analogy can be drawn between such a case and that of a man who attempts to operate a motor vehicle on the public highway without having sufficient knowledge of or skill in the manner of operation and who fails to properly direct its course.

While it is true that the sporting element in the game is to some extent its uncertainty, yet this is a factor among the players themselves and does not comprehend that a player can be so poor, so unskilled and so careless about his manner of addressing and striking a golf ball as to be entirely unable to control or to fail to control its movement or direction and so jeopardize the life or limbs of people who are lawfully upon the golf course, as the minor plaintiff was. This case is in no degree different from that in which a man shooting a rifle at a target seeks to direct the bullet at the target merely by placing the gun to his shoulder and pulling the trigger without first being careful to sight the gun at the target.

It is conceded that the ball which thus veered or sliced caused the minor plaintiff's injuries. Under the testimony, the question of whether or not the defendant took the correct posture and struck the ball correctly was an issue of fact. The testimony may have been conflicting, but that was for the jury to reconcile as arbiters of the facts. In view of the conflict, the testimony had to be submitted to the jury, and the verdict of the jury in favor of the plaintiff is conclusive of the existence of the fact that the defendant did make an improper posture and did address and strike the ball improperly.

As to the second question involved, in considering whether or not the defendant was negligent in failing to give warning, the defendant contends that, if the plaintiff relies upon the theory that the ball was improperly struck, there was no necessity of a warning being given. That is fallacious for the reason that had the warning been given, the minor plaintiff's attention would have been attracted to the defendant's driving and would have so enabled him to protect himself by dodging when the ball came in his direction, or moved out of danger. But the plaintiff counters by contending that not only was the defendant negligent in striking the ball improperly, but he was guilty of further negligence in failing to give a warning which would have permitted the minor plaintiff to protect himself from injury.

The thought is advanced that the slicing of a golf ball is a matter of common occurrence, and the fact that the defendant sliced is, therefore, no negligence; that it is unnecessary for the player to give any warning of his intention to play, for everybody around the tee knows the assembled players are about to drive off, and that the caddies there assembled, including the minor plaintiff, knew of the custom. Such a contention is unwarranted. There is no evidence that the minor plaintiff knew this, and there is evidence that this was the first time he had ever caddied, and the injury was received as the ball was being driven from the first tee. On the contrary, if, for the sake of argument, we take the defendant's contention that slicing, such as this, is a common occurrence, it must certainly follow that the defendant must have anticipated his slice as a strong possibility, and, therefore, it became his duty to observe if anyone was in the area in which his ball would traverse if sliced and to warn anyone in that area in order that they might seek a place of safety and be prepared to protect

themselves in the event the ball came in their direction. It cannot be said that it was unnecessary for the defendant to give warning of his intention to play, because everyone around the tee knew that this would be done, for the reason that the minor plaintiff was engaged as a caddy and had just watched the course of his employer's ball, marked its location, and was just turning toward the tee to watch for the next drive when the defendant's ball struck him. Had the defendant given a warning, the minor plaintiff would have been in a position to turn away from the direction of the ball or fall to the ground or protect himself in some other manner. The defendant contends that by giving warning, notice would only have been given to the minor plaintiff the information which he already knew. This is palpably incorrect for, though the minor plaintiff knew the other players would drive, he certainly could not know at what exact second the drive would be made. Under the defendant's own theory, if the slicing of the ball is a common occurrence, it was his duty to give warning of his intended drive, and the failure to give a warning caused this injury to the minor plaintiff.

As aptly stated by Judge Drew in Benjamin v. Nernberg, 102 Pa. Superior Ct. 471: "Although the game of golf has been played for many years by thousands of people, serious accidents to players resulting in litigation have been so few that there is little in the books to help the court. The case of Toohey v. Webster, 97 N. J. L. 545, 117 Atl. 838, relied upon by appellant, is not in point. In that case the plaintiff, a boy thirteen years of age, who was acting as caddie, was thirty-five to seventy-five yards ahead of the defendant and but four or five feet outside the direct line of play, when defendant without giving timely warning attempted to loft his ball over the heads of parties out in front of him and struck plaintiff. Defendant admitted he did not see plaintiff until after he made his shot. All the other witnesses who were on the course testified that they saw the plaintiff as defendant made his shot. Under these circumstances, the court decided that the case was for the jury on the question of defendant's negligence."

It would seem to the writer that the case of Toohey v. Webster, 97 N. J. L. 545, 117 Atl. 838, while not in point in the "Nernberg" case, controls the case at bar.

Here was a boy, eleven years old, who was acting as a caddy, twenty-five or thirty feet to the right of the first tee and about six feet in front of it before the members of the defendant's foursome began to drive. He had never caddied before. The golfer for whom he was caddying drove his ball and he watched the course of the ball until it came to rest and he fixed its position; as he turned to look toward the first tee he was struck in the left eye by the golf ball irregularly driven by the defendant after several attempts to drive off from the tee. There, as here, the defendant gave no timely warning and admitted he did not see the plaintiff until he made his shot slicing the ball. There, as here, the other players saw the plaintiff before the "bad" shot. The court there held that the case was for the jury, as we held in the instant case, as the defendant was under a duty to use reasonable care. With the boy in the position that he was, and the defendant's knowledge that his ball might deviate from the intended course, it was his duty to give timely warning. The boy was not well out of the direction the ball might take, such as slicing, as the defendant well knew it was a usual occurrence, and produced testimony to that effect. He knew the ball might not be correctly played, and as was said by the court in Andrew v. Stevenson, 31 Scottish Law Rev. 194, 198: "I do not for a moment profess to lay down that whenever a player thinks he sees what seems to him a clear space in front of

him he can proceed at once to play a full shot, or, for that matter, any shot, regardless of the risk of striking some other player."

There was a duty, under the facts of this case, on defendant to warn plaintiff of his intention to play. He certainly was at fault and disregarded a rule or custom of the game in not giving adequate and timely warning.

The mere fact that the case is new and may impose liabilities not heretofore imposed does not indicate that there is no existing liability. The first decision fixing liability for negligence in the operation of an automobile was at that time assumed to be one of a far-reaching nature and imposing unfair and unheard of burdens upon operators. The law in that field of negligence is now fixed and the automobile case is one of the most ordinary types of litigation. There is no difference between the imposition of liability in this case because of its novelty and the imposition of the liability in the first automobile case.

The defendant testified that he did not see the minor plaintiff, but, concededly, the other members of his foursome saw persons standing where the plaintiff was struck, and the defendant should have been aware of the presence of the minor plaintiff and, therefore, given adequate and timely warning, and the jury so found by its verdict. In the Toohey case it was held that the evidence raised the issue of fact whether there was adequate and timely warning given the plaintiff, and the question of the defendant's negligence was one for the jury. The court there said: "With these people out in front of him, and with the knowledge that his ball might deviate from the intended course, the defendant attempted a shot in the direction of the fourth hole, intending to loft his ball over the bunker on the fourth fairway and over the heads of all who might be between him and the bunker, but instead of a loft shot, the ball carried low and curved to the left. Under such circumstances, the defendant was under a duty to use reasonable care before delivering his stroke, to observe whether there were any persons in the general direction of his drive who might be endangered thereby, and, if so, to see that they were adequately warned. Defendant testified that he called 'Fore!' before delivering the stroke in question and just after looking ahead to see what the situation was, and that he did not see the plaintiff until after he (the defendant) had struck the ball, and that when he saw the ball going in plaintiff's direction he called 'Fore!' again very loudly. On the other hand, all the other witnesses who were on the course testified that they saw the boy either on the third green or between it and the aforesaid bunker as the defendant made his shot, and three of them who were at or near the third green did not hear any call of 'Fore!' or other warning until just as plaintiff was struck. This raised an issue of fact as to whether adequate and timely warning was given to the plaintiff, and, therefore, the question of defendant's negligence was properly left to the jury."

In the New Jersey case there was not the additional factor as here of positive evidence by an expert golfer and golf professional that the defendant assumed an improper posture and improperly addressed and struck the ball.

The basis of the duty demanding the exercise of reasonable care is set forth in 45 C. J. 644: "The duty may arise from the relation or situation of the parties. It may arise from the circumstances surrounding or attending an occurrence or transaction, as where one is using or dealing with a highly dangerous thing, which, unless managed with the greatest care, is liable to cause injury to bystanders or others. (1) It is the duty of every person so to conduct his business as not knowingly or negligently to expose others to imminent danger, and there is a general duty owing to others of not injuring them by an agency set in operation by one's act or omission or, as it has been expressed, of not injuring them in the employment of one's own legal rights. Accordingly, (2) the law

imposes on a person engaged in the prosecution of any work an obligation to use ordinary care to perform it in such a manner as not to endanger the lives of persons or property of others, and when there is danger of injury to the person or property of one through the act or omission of another, the latter is under a duty to use reasonable care to avoid such injury."

The Missouri Court of Appeal held in Biskup v. Hoffman, 220 Mo. App. 542, 287 S. W. 865, that when a person is in the direction in which the ball was to be driven or in which it might be carried if struck incorrectly or if diverted from its course by the wind, the question of the defendant's negligence is for the jury if the defendant fails to give warning before driving.

The two foregoing cases are decisions of the court of last resort, and in our opinion state the law correctly and control the present case. The only remaining questions are those of the assumption of risk and of contributory negligence, being the third question involved.

In considering those we again advert to Toohey v. Webster, supra, where the court said: "We have next to consider whether the boy was guilty of contributory negligence. He was thirteen years of age at the time of the accident and was rightfully on the golf course and in the exercise of a duty which required him to be where he was at that time. The defendant, as already stated, was not on the fourth tee when he made the shot in question, but was in the rough to the left of and at an angle to the fairway of the fourth hole, and in the rear of the plaintiff at a distance variously estimated at from thirty-five to seventy-five yards away, and under such circumstances we think that the boy had a right to expect that the defendant would not attempt to drive his golf ball so close to the direction in which he (the plaintiff) was proceeding as to put him in danger without giving him some audible warning in time for him to protect himself. If warning was given so that the boy heard it or should have heard it in the exercise of due care, under the circumstances then existing, in time to avoid being hit, then the accident was partly, at least, the result of his own negligence; but, if no warning was given, or was not given in time, or was given in such a way that the plaintiff did not hear it and would not have heard it by the exercise of reasonable care, then it was at least a question for the jury to say whether the plaintiff was negligent. As already related, the plaintiff testified that he heard no warning until just as the ball struck him, and in this he is supported by two other witnesses. Therefore, the question of contributory negligence was clearly for the jury."

This brings us to the remaining question as to whether the plaintiff assumed the risk of being struck by a golf ball while acting as a caddy on the golf course. Having already decided that it was the duty of the defendant to give audible and timely warning of his intended play, it naturally follows that, if the defendant failed to give this warning in a proper manner before making his shot, he was guilty of a breach of duty, and it cannot be seriously contended that, under such circumstances, the plaintiff assumed as a matter of law the risk of injury resulting from defendant's failure to perform a duty upon which the plaintiff had the right to rely. In such a situation the question of the assumption of risk was for the jury: Albanese v. Central R. R. of N. J., 70 N. J. L. 241, 57 Atl. 447.

A boy, as was this minor plaintiff, being eleven years of age, is not to be held responsible for the exercise of the same degree of care as a person of advanced years and mature judgment. And the jury was properly instructed when it was charged that in considering whether or not the boy was guilty of contributory negligence at the time he sustained the personal injuries complained of, it should consider that he was only eleven years of age as well as

what was his ability to comprehend the circumstances under all the evidence in the case: Kierkowski v. Connell, 253 Pa. 566.

Even if it be conceded that the plaintiff assumed the ordinary risk incidental to the game he certainly did not assume the danger of a player driving in the improper manner in which the defendant drove, nor did he assume the danger of the defendant driving without giving warning. There was no reason for the minor plaintiff to anticipate that the defendant would be negligent. He had no reason to anticipate that the defendant would fail to give timely warning, and he had a right to assume that the defendant would use ordinary care, to assume the proper posture and to strike the ball in the proper manner, and, further, that he would give the usual and customary warning. Throughout the consideration of this question it must constantly be borne in mind that the minor plaintiff was but eleven years of age at the time he was injured and his ability to realize the nature of any risks which he might assume were for the jury.

The defendant relies upon Douglas v. Converse, 248 Pa. 232, which is cited in Benjamin v. Nernberg, supra, to support his position respecting the assumption of risk. In this case a spectator was injured by a horse ridden by the defendant in a polo game, and the Supreme Court reversed the decision of the lower court in granting a nonsuit. The defendant in his brief does not quote the decision of the Supreme Court in which the limits of the doctrine of assumption of risks is set forth.

The Supreme Court said: "There is in the game of polo the element of risk, and both players and bystanders assume the chance of the ordinary dangers incident to the game in participating in and witnessing the contest. Spectators, however, do not assume a risk which results from reckless playing, or the failure of a player to control and guide a horse so as to avoid accident when such control is reasonably possible. They, however, have a right to assume that the game will not voluntarily, or without reasonable effort upon their part to prevent, permit their horses to leave the field limits."

That decision implies that, as to players of the game, the law of negligence applies. In the present case, in view of the defendant's improper striking of the ball and his failure to warn, it can scarcely be said that that which caused his injury was an ordinary danger incident to the game, but rather was reckless playing or the failure of the defendant to control and properly strike his ball and his failure to give timely warning. It is apparent that this case is much stronger, for in playing a polo game an animated force is put in motion and, as all riders of horses know, it is a force possessing a volition of its own. In the game of golf an inanimate object is put in force and is subject solely to the control of the player.

The defendant strongly relies upon the decision in Benjamin v. Nernberg, 79 Pitts. L. J. 47, affirmed in 102 Pa. Superior Ct. 471 (Drew, J.). Apparently it is the first case of this character decided in this state. The facts, however, differ from the present case. We deem the present case stronger. We cannot agree with the defendant that the law as set forth in that decision controls this case. The court there held there was no duty on the defendant to warn the plaintiff that a ball was to be driven under the evidence in that case, which was strikingly dissimilar to the evidence adduced in the instant case.

It is to be noted that there was lacking in that case the direct testimony which appears in this case, that the defendant assumed an improper posture and improperly struck the ball. This in itself is sufficient to take this case out of the rule set forth in Benjamin v. Nernberg, supra. The further difference in the present case is that, even under the defendant's own theory and the evidence in support thereof, such slicing as occurred here is of frequent occurrence. In

the "Nernberg" case the court relied upon the evidence that the plaintiff was not in the line of flight of the ball. Since the defendant's own evidence in the present case indicates that there cannot be a particularly defined line of flight for the ball, it thereupon creates the duty of giving warning if there is anyone in the area likely to be traversed by the ball. It is submitted that this difference alone, appearing from the defendant's own evidence, is sufficient to distinguish it from it.

The difference between the present case and the baseball cases relied upon by the defendant is that it appears here from the evidence that it is customary to give warning when driving the ball from a tee under certain conditions, whereas it is not customary to give a warning in a baseball game before each ball is pitched or struck.

And now, November 5, 1931, the above matter coming on to be heard by the court in banc upon motions for judgment for the defendant notwithstanding the verdict for the plaintiffs and for new trials, together with oral arguments and briefs, after due consideration thereof, the court doth order and decree that the motions for judgment n. o. v. be and they are hereby discharged, and the motions for new trials be and they are hereby discharged and the prothonotary is directed to enter judgments upon the verdicts in favor of the plaintiffs and against the defendant, George Hetherington.

From William R. Toal, Media, Pa.