91 So.2d 49 (1956)
Alberto HAWAYEK
v.
William J. SIMMONS and The Employers Liability Assurance Corporation, Limited.
No. 20745.
Court of Appeal of Louisiana, Orleans.
November 26, 1956.
*50 Benjamin E. Loup and A. J. Marciante, New Orleans, for plaintiff and appellant.
Felicien P. Lozes and James H. Drury, New Orleans, for defendants and appellees.
McBRIDE, Judge.
On April 25, 1954, at about noontime, Alberto Hawayek and his brother-in-law, William J. Simmons, were fishing from an open boat propelled by an outboard motor in Lake Pontchartrain near what is known as "Hospital Foundation." Simmons was casting a lure with a treble fishhook or cluster of three hooks by means of a five-foot rod equipped with a casting reel. Simmons, after making an overhand cast, felt his lure strike some obstruction, and looking around he found the treble hook lodged in plaintiff's cheek. It developed that the fishhook had *51 struck Hawayek in the right eye. Claiming that his eye was badly injured, Hawayek brought this suit against Simmons and his liability insurer, in solido, for the sum of $21,104 for personal injuries, medical expenses and other damages. The petition alleges that Simmons was negligent in several specified respects. The answer of the defendants is that there was no fault or negligence on the part of Simmons, and, in the alternative, defendants set up and specially plead that by going fishing plaintiff had assumed the risks in connection therewith and, therefore, cannot recover.
After a trial on the merits of the case, there was judgment in favor of plaintiff for the sum of $154.65, representing the amount of the medical and hospital expenses due plaintiff under the provisions of the policy of liability insurance issued to Simmons by the defendant, The Employers' Liability Assurance Corporation, Ltd., as set out in "Coverage BMedical Payments" thereof.
The plaintiff has appealed from said judgment.
The trial court was of the opinion that the amount of $154.65 was due to plaintiff under the policy contract without regard to any negligence on the part of Simmons. However, the judge disallowed all other claims made by plaintiff for the reason that he felt plaintiff had not sustained the burden of proving negligence on Simmons' part. In his written reasons for judgment the trial judge made these observations:
"* * * Plaintiff himself testified that he did not see what happened. He stated that he felt a stinging sensation in his eye and that upon placing his hand on his eye he extracted therefrom a single hook on the fishing line of the defendant. He does not know how it got there. Defendant, on the other hand, states that he had on his line at the time a lure with a treble hook or cluster of three hooks, that his cast was an overhand cast, and that when he felt an obstruction and looked around he found the treble hook lodged in plaintiff's cheek.
"That was all the testimony before the Court. It is just as reasonable to assume that plaintiff was in error when he stated he did not move, as it is to assume that defendant was in error when he stated that he cast overhand. This Court cannot decide the case on possibilities or probabilities. The plaintiff must prove his case with reasonable certainty."
His counsel concede that plaintiff was unsuccessful in proving that Simmons was guilty of any acts of commission or omission which might be deemed to be negligent, but it is strenuously contended that notwithstanding that there is no proof of Simmons' negligence that a recovery by plaintiff is in order under the doctrine of res ipsa loquitur which, it is said, has peculiar application to the case.
The evidence shows that just prior to and at the time defendant's lure struck him in the eye plaintiff was seated in the forward part of the eighteen-foot boat with his head bowed looking into the water, and we are convinced that he did not see Simmons make the cast. Plaintiff states that he does not know the reason for the lure coming into contact with his face. He says that he felt the stinging sensation in his eye, and that he extracted from his eye the hook on the fishing line of his companion. Simmons did not explain any of his actions nor did he state that no negligent act on his part caused his hook to become lodged in plaintiff's eye. All he said was that he made an overhand cast and then felt an obstruction and looking around he saw that the accident had happened.
We believe under these circumstances that the doctrine of res ipsa loquitur is clearly admissible in the case. The leading authority in this state enunciating the doctrine is Lykiardopoulo v. New Orleans & C. R., Light & Power Co., 127 La. 309, 53 *52 So. 575, 576, in which the Supreme Court said:
"* * * In cases where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itselfres ipsa loquiturthat is to say, that a presumption of negligence arises from the fact itself of the accident. In such cases, the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie case, and the burden is on defendant to show absence of negligence. Res ipsa loquitur. * * *"
The doctrine has been applied in a variety of cases by the courts of this state, and the theory underlying the doctrine is that the rights of a person who is injured in an accident under circumstances which leave the cause of the accident unknown to him must be protected. As a result of the doctrine there then arises the legal presumption of the superior knowledge on the part of the owner, possessor or operator of the instrumentality which caused the injury. Roy v. Louisiana State Department of Agriculture & Immigration, 216 La. 699, 44 So.2d 822; Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L. R.2d 1437; Gerald v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233; Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11; Jones v. Shell Petroleum Corp., 185 La. 1067, 171 So. 447; Mercer v. Tremont & G. Ry. Co., La.App., 19 So.2d 270; Gershner v. Gulf Refining Co., La.App., 171 So. 399; Rome v. London & Lancashire Indemnity Co. of America, La.App., 169 So. 132; Pizzitola v. Letellier Transfer Co., La.App., 167 So. 158.
The doctrine of res ipsa loquitur furnishes a rule of evidence, the applicability of which is to be determined on the conclusion of the trial. Roy v. Louisiana State Department of Agriculture & Immigration, supra; Plunkett v. United Electric Service, supra; Gerald v. Standard Oil Co. of Louisiana, supra.
In the case at bar the plaintiff's attention was directed to a fish alongside the boat when Simmons' lure struck him in the eye. As he was not looking at defendant, of course it was not possible for him to say exactly what defendant did that might have caused the accident, and we believe that under the circumstances of the case we must assume that Simmons was fully informed as to what caused the lure to damage plaintiff's eye, while the plaintiff, as we have said, clearly did not have any such information. It seems to us that when a fisherman makes an overhead-forward cast, his lure would not be expected to take a lateral and horizontal tangent and strike another person in the boat but for some fault or negligence on the part of the one who makes the cast. Under the established jurisprudence of the State and under such facts there necessarily arises the presumption that Simmons was negligent from the happening of the accident itselfres ipsa loquitur.
We do not believe that it can even be questioned that the defendants have not shown that Simmons was free from negligence in connection with the occurrence. To absolve themselves from liability, the burden was upon defendants to show that Simmons was guilty of no negligence and in the absence of such a showing, we can only presume that the accident occurred through some fault of Simmons who had sole charge of the instrumentality which caused the injury to plaintiff.
When the doctrine of res ipsa loquitur is applied in a damage suit, the defendant is charged with the duty of showing his freedom from negligence, i. e., that he *53 did not do anything that he should not have done, that he left undone nothing he should have done and that he neglected no legal duty which he might have owed to the plaintiff. Watkins v. Gulf Refining Co., 206 La. 942, 20 So.2d 273; Horrell v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709; Vargas v. Blue Seal Bottling Works, 12 La. App. 652, 126 So. 707.
The defendants point out that plaintiff's petition only contains certain specific charges of negligence but no general charge of negligence against Simmons, and they argue that whereas a general charge of negligence is not alleged, the doctrine of res ipsa loquitur cannot be admitted into the case. We can see no valid force in this argument.
Under our settled jurisprudence the doctrine is applicable even where there is made no allegation of general negligence whatsoever and only acts of specific negligence are alleged. This court had occasion to pass on that proposition in the case of Pizzitola v. Letellier Transfer Co., Inc., supra [167 So. 159], wherein we said:
"But it is asserted that unless the petition contains a general charge of negligence, we are without warrant for treating specific allegations of fault as surplusage. However, it is too well settled to require the citation of authority that a general allegation of negligence is merely the pleader's own conclusion of law. If, by reason of the fact of the happening of the accident, the burden is cast upon the defendant to show a freedom from fault, we do not think that the plaintiff's failure to allege a conclusion of law, i. e., a general charge of negligence, would alter the situation."
The Supreme Court passed on our holding in the Pizzitola case in Loprestie v. Roy Motors, Inc., supra. After quoting both from the Lykiardopoulo case, supra, and the Pizzitola case, the Supreme Court had this to say [191 La. 239, 185 So. 13]:
"The decisions cited supra make it clear that plaintiffs did not have to negative negligence upon their part, nor make a general allegation of negligence. Nor did plaintiffs have to allege or prove specific allegations of negligence."
Thus, we think that the Supreme Court gave full approval to the conclusions drawn by us in the Pizzitola case, and we take it that under the jurisprudence it is not now necessary for a plaintiff in a damage suit to make any general allegations of negligence as a predicate for the admission of the doctrine of res ipsa loquitur into the case.
We now turn to the contention that there can be no recovery by plaintiff for the reason that fishing being the sport that it is, that when plaintiff embarked on the expedition with Simmons he assumed all incidental risks including the risk of injury from an accident such as happened.
No one will deny that a participant in almost any game or sport can be said, in legal contemplation, that by the fact of his participation therein he assumes all risks incidental to the particular game or sport which are obvious and foreseeable.
The rule is stated in Shearman and Redfield on Negligence, Vol. 4, Rev.Ed., p. 1566, as follows:
"One who participates in the diversion afforded by an amusement device accepts the dangers that inhere in it so far as they are obvious and necessary. The same is true of one who participates in other sports or pastimes, `just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball.'"
In Stevenson's Law of Negligence in the Atlantic States, Vol. 1, p. 587, is found this language:
"One of the basic principles of law is that one who takes part in a sport *54 or an amusement accepts the dangers normally incidental thereto. Any dangers inhering in it become risks assumed by the participant in so far as they are obvious and necessary.
"This rule of law stems from the ancient maxim that that to which a person assents is not esteemed in law an injury. So the willing exposure to a known danger is an acceptance of the risk of injury. Volenti non fit injuria. One may not engage in a game and then complain of such characteristic incidents as give it the desired zest."
However, we do not believe that it may be said that plaintiff assumed the risk of such an accident as he sustained, the happening of which, under the doctrine of res ipsa loquitur, makes it legally certain that there was fault or negligence on the part of his companion on the fishing trip. Hawayek and Simmons were the only occupants of the boat and there is no valid reason why the plaintiff should have been expected to foresee that Simmons in casting out his line would throw it horizontally and sideways and into the boat so that the lure would cause injury to him. There is no merit in the defense that there was an assumption of the risk on plaintiff's part or that the asserted risk was incidental to the sport of fishing, obvious and necessary. There are cases reported in other jurisdictions involving injuries to persons who participate as players or caddies in the game of golf and without exception the cases have held that when the defendant is guilty of a breach of duty that under such circumstances the plaintiff, as a matter of law, did not, by the fact of his participation in the game, accept or assume the risk of an injury resulting solely from defendant's negligence or want of care.
In one of the leading cases, Toohey v. Webster, 97 N.J.L. 545, 117 A. 838, 839, 23 A.L.R. 440, the New Jersey Court of Errors and Appeals said:
"This brings us to the remaining question as to whether the plaintiff assumed the risk of being struck by a golf ball while acting as a caddie on the golf course. Having already decided that it was the duty of the defendant to give audible and timely warning of his intended play, it naturally follows that, if the defendant failed to give this warning in a proper manner before making his shot, he was guilty of a breach of duty, and it cannot be seriously contended that, under such circumstances, the plaintiff assumed, as a matter of law, the risk of injury resulting from defendant's failure to perform a duty upon which the plaintiff had the right to rely. In such a situation the question of the assumption of risk was for the jury. Albanese v. Central R. Co., 70 N.J.L. 241, 57 A. 447 [16 Am.Neg.Rep. 135]."
In Douglas v. Converse, 248 Pa. 232, 93 A. 955, 956, the Supreme Court of Pennsylvania held that while spectators at a polo game assume the chance of ordinary dangers incident to watching the game, they do not assume a risk resulting from reckless playing or a player's failure to exercise reasonable control over his horse. The Court said:
"* * * There is in the game of polo the element of risk, and both players and bystanders assumed the chance of the ordinary dangers incident to the game in participating in and witnessing the contest. Spectators, however, do not assume a risk which results from reckless playing, or the failure of a player to control and guide a horse so as to avoid accident when such control is reasonably possible. They, however, have a right to assume that the game will be played within boundaries, and that players will not voluntarily, or without reasonable effort upon their part to prevent, permit their horses to leave the field limits."
We think that the same rule would apply with respect to the pastime of fishing. While one who becomes part of a fishing *55 venture might be said to assume all ordinary and normal hazards incident to the sport, the law does not require him to assume all risks of negligence of those other persons in the fishing party.
Defendants have cited the case of Toca v. Rojas, 152 La. 317, 93 So. 108, decided by our Supreme Court. There plaintiff claimed damages for injuries to his son occasioned by a fishhook on the end of a line. Defendant was absolved from liability for the reason that plaintiff had failed to carry the burden of showing not only that it was the act of defendant's son that caused the injury but that such act was the result of negligence.
We are also cited to Gurtner v. Bordes, 15 La.App. 330, 131 So. 494, decided by this court, wherein plaintiff claimed damages for his son's injury when struck by a club in the hands of defendant's son. The two boys were playing a game which they called "golf" with a club improvised from a stick found in the neighborhood, using stones in place of golf balls. The suit was dismissed because we found that it was not shown that there had been negligence on the part of defendant's son.
Neither of the cited cases are authority for the proposition that the plaintiff in the case at bar assumed the risk of sustaining an injury resulting solely and only from Simmons' fault or negligence.
Plaintiff was taken to a clinic at Slidell, Louisiana, where the physicians administered certain medication to the injured eye to alleviate plaintiff's pain and suffering, and thereafter he was taken to a hospital in New Orleans. Dr. Noble, who treated plaintiff there, testified he was innoculated again tetanus, was put "in fever therapy" and his eye was immobilized. Plaintiff was confined to the hospital for a period of five days and for four weeks in all it was necessary that his injured eye be bandaged.
Fortunately, plaintiff, who is 25 years old, has completely recovered without loss of vision to any extent, and the only residue of the accident is a slight scar on the cornea of his right eye which is almost imperceptible.
The judgment awarded plaintiff only the sum of $154.65, representing medical expenses, which the judge believed was due under the medical payment provisions of the policy contract upon which plaintiff bases his suit against the defendant insurer. Taking into consideration the nature of plaintiff's injury, his stay in the hospital, the necessity of having the eye bandaged for four weeks, and the physical pain and suffering and mental anguish, we believe that the amount of the award should be increased by the sum of $1,500. Undoubtedly plaintiff's experience was a harrowing one.
Plaintiff made claim for $1000 for the "loss of schooling" but this item must be rejected. He was attending the College of Commerce at Tulane University in New Orleans under the benefits of the G. I. Bill at the time of the accident and he asserts the eye injury prevented his taking final examinations, and as a result of failing to take the required examinations he lost one full semester. We entertain the belief that if he had wanted to, plaintiff could have made arrangements with Tulane University for the taking of the examinations during the summer months without interruption of his schooling. As a matter of fact plaintiff quit school after the accident and has completely given up his studies.
Plaintiff contends that he should be allowed to recover double the amount of $154.65, which is the aggregate sum incurred for medical and hospital expenses. This contention is made on the theory that the defendant insurer is contractually liable twice for the $154.65, once under "Coverage B. Medical Payments" and again as the insurer for the damage sustained by reason of Simmons' tort.
The policy sued upon is what is known as a Personal Liability Policy (comprehensive *56 form) and "Coverage B. Medical Payments" thereof obligates the insurer:
"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident, * * * (b) * * * caused by the activities of an insured * * *."
Under the provisions of the policy, "Coverage A. Liability," the insurer undertook:
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, and as damages because of injury to or destruction of property, including the loss of use thereof."
In other words, the insurer under "Coverage B. Medical Payments" was bound to recompense plaintiff for his medical costs incurred by reason of bodily injury "caused by the activities of an insured" even where the offending insured was without fault. The insurer was also liable unto plaintiff for his medical expenses under the provisions of "Coverage A" as a result of the damage sustained by reason of Simmons' fault or negligence, as Simmons was "legally obligated to pay" such expenses.
But we do not believe that plaintiff is entitled to recover both under the medical payments clauses and the liability clauses for medical expenses incurred in one and the same accident. It would be inequitable to construe the policy contract so as to allow the plaintiff to collect double the amount of his damage. It strikes us that a reasonable interpretation of the policy clauses would be that plaintiff had the choice of either claiming the amount of the medical expenses under the medical clauses or the liability clauses of the policy, but certainly not under both.
For the reasons assigned, the judgment appealed from is increased to the sum of $1654.65, and as thus amended and in all other respects it is affirmed. Defendants are to pay the costs of this appeal.
Amended and affirmed.