111 So.2d 472 (1959)
Peter Paul BRADY, Appellant,
v.
Philip M. KANE, Appellee.
No. 58-593.
District Court of Appeal of Florida. Third District.
April 28, 1959.
Kelner & Lewis, and Fred Patrox, Miami, for appellant.
Wicker & Smith, Miami, and Stephen C. McAliley, Jacksonville, for appellee.
CARROLL, CHAS., Chief Judge.
The appellant Peter Paul Brady filed a tort action in the circuit court in Dade County against the appellee Philip M *473 Kane, seeking damages for injuries which resulted from alleged negligent conduct on the part of the appellee.
The case was presented to a jury, and a motion for directed verdict made on behalf of the defendant Kane at the close of the plaintiff's evidence was granted. Judgment was entered and the plaintiff has appealed. The determinative question is whether the court erred in granting the motion for directed verdict.
In his complaint the appellant alleged negligence as follows:
"1. On or about the 8th day of May, 1957, on the premises known as the Normandy Shores Country Club, located on Normandy Isle, in the City of Miami Beach, State of Florida, the plaintiff was on or about the golf course of the aforesaid premises pursuant to playing golf thereupon.
"2. At the aforesaid time and place, the defendant was also on the aforesaid golf course and incidental to playing golf thereupon, was swinging, brandishing and otherwise practicing golf strokes with a golf club, and at the same time and place, the said defendant did so negligently and carelessly swing, brandish and practice golf strokes with the aforesaid golf club, that the same was forced into, against and was caused to strike the plaintiff's head with great force and violence thereby causing him the injuries as hereinafter more particularly alleged."
Defendant's answer admitted the allegations in paragraph No. 1 of the complaint, denied the remaining allegations, and averred the defenses of contributory negligence and assumption of risk.
The plaintiff was one of four persons playing together in what is known as a golf foursome. The accident occurred on the ninth tee, as one of them was in the process of teeing off. The plaintiff was standing somewhat to the rear of that player, and facing in the direction of the hole to be played. The defendant, who was then behind the plaintiff, took a practice swing in the course of which he struck plaintiff in the head with his golf club.
The testimony bearing on the question if liability was that of the two parties involved. The defendant was called first as an adverse witness. In his testimony he admitted striking the plaintiff with his driver; said he did not see plaintiff before he made the practice swing; that he had taken practice swings on other tees before the ninth. When asked whether the plaintiff had warned him about swinging his club, defendant answered, "He said something to me at one of the previous holes. That is correct."
The plaintiff in his testimony stated that he thought he was to be the second man to drive off, and that he was standing watching the first man drive; that the others were behind him, and that custom called for the parties to stand still while the first man was making his shot. That portion of his testimony was as follows:
"Q. Was Mr. Allen the first man to drive off? A. Yes.
"Q. Who was the second? A. I think I was next. I am not positive.
"Q. Can you tell me where you were standing? A. Standing here, facing him.
"Q. Will you put a `P' where you were standing, and the others? A. They were behind me. Mr. Kane was behind me and the caddies. You just stand away from the fellow who was shooting. Allen was shooting and you stand away, waiting for him.
"Q. Do the other golfers  A. You stand still. That is golf etiquette. You stand still until the other fellow meets his shot.
"Mr. Blomqvist: I object to that.
"The Court: We are not interested in golf etiquette.

*474 "Q. (By Mr. Lewis) How long have you been playing golf? A. Eighteen or twenty years.
"Q. Have you ever been struck by a golf club before? A. Never.
"Q. Will you tell us in your own words just what happened on this occasion? A. As I say, we were ready to tee off on the 9th hole. Mr. Allen  whether he completed his shot, I don't know  and I was struck on the head and I found myself on my knees and blood streaming down my face and Mr. Kane helped me by getting a wet handkerchief and the next thing, I was in the hospital."
On a motion for directed verdict the trial court will consider the testimony adduced in the cause in the light most favorable to the party moved against; and the moving party admits every conclusion favorable to the adverse party which may rationally be inferred by the jury from the evidence before it. See, e.g., Rodi v. Florida Greyhound Lines, Fla. 1952, 62 So.2d 355; Budgen v. Brady, Fla.App. 1958, 103 So.2d 672, certiorari denied, Fla. 1958, 105 So.2d 793; Schutzer v. City of Miami, Fla.App. 1958, 105 So.2d 492.
Thus, on the evidence disclosed, the jury would have been entitled to find in this case that the appellant was in a position where he was entitled to be standing, on the ninth tee somewhere to the rear of the member of the foursome who was in the process of driving his ball from the tee; that appellant was standing still, and was facing the direction in which the driver was to strike his ball; that the appellee-defendant was behind and out of the vision of the appellant, and that appellant had no reason to expect danger from a practice swing to the rear of him while one of the party was in the process of driving his ball from the tee; and that the action of the appellee-defendant in swinging the club at that time and under those circumstances, to the rear of the appellant, and striking appellant on the head with a golf club was negligent conduct on the part of the appellee-defendant.
The defendant's action in taking a practice swing in the midst of his several companions, and in the space which they were all occupying, at a time when it was not proper to take a practice swing, must be judged by the rule that a party may not conduct himself in a manner which will likely cause injuries to others; and if he does so and injury results, then his conduct will be classed as negligence. Cf. Jacksonville Journal Company v. Gilreath, Fla.App. 1958, 104 So.2d 865; Jesters v. Taylor, Fla. 1958, 105 So.2d 569 (separate opinion, Roberts, J.). When the defendant took a practice swing behind the appellant, and without his knowledge, he was under a duty to do so in a manner that would not cause injury to his unsuspecting companion.
Appellee contended that appellant assumed the risk of the injury which occurred. Viewing the evidence in the light most favorable to the party moved against, that defense was not applicable on the facts as they stood at the close of the plaintiff's case. Therefore, at the least, the question was one for the jury. "Voluntary exposure is the bedrock upon which the doctrine of assumed risk rests. Appreciation of the danger is an essential to the defense of assumption of risk * * *." Bartholf v. Baker, Fla. 1954, 71 So.2d 480, 483. A member of a golfing foursome assumes certain obvious and ordinary risks of the sport by participating therein with knowledge of its normal dangers, but a player does not assume a risk which cannot reasonably be anticipated, and which may be the result of improper and unauthorized negligent action of another player. See Bartholf v. Baker, supra; Jesters v. Taylor, supra; Hawayek v. Simmons, La. App. 1956, 91 So.2d 49, 61 A.L.R.2d 1254; Toohey v. Webster, 97 N.J.L. 545, 117 A 838, 23 A.L.R. 440; Klinsky v. Hanson Van Winkle Munning Co., 38 N.J. Super. 439, *475 119 A.2d 166; Povanda v. Powers, 152 Misc. 75, 272 N.Y.S. 619; Getz v. Freed, 377 Pa. 480, 105 A.2d 102; Cleghorn v. Oldham, 43 T.L.R. 465 (K.B. 1927).
For the reasons stated we hold that the able trial judge was in error in directing a verdict for the defendant in this case. The judgment appealed from is reversed, and the cause is remanded for new trial.
Reversed and remanded.
HORTON and PEARSON, JJ., concur.