(76 South. 708)

Nos. 22062, 22650.

WHITE v. MAISON BLANCHE CO. et al.

(Oct. 29, 1917.)

On Motion to Dismiss Appeal.

*(Syllabus by Editorial Staff.)*

1. APPEAL AND ERROR &copy;&rarr;409 — CITATION — DISMISSAL.

Where plaintiff's appeal was perfected May 3, 1917, within year, it was duty of clerk under Code Prac. art. 581, to issue citation of appeal, and the fact that citation issued and was served after delays for appeal had expired was no cause for dismissing appeal.

2. APPEAL AND ERROR &copy;&rarr;395—APPEAL BOND —ATTESTATION—STATUTE.

Under Act No. 112 of 1916, §§ 3, 9, an appeal will not be dismissed where it is not claimed that appellant was given any notice by appellee of the insufficiency of the bond of appeal either in form or amount.

On the Merits.

*(Syllabus by the Court.)*

3. MASTER AND SERVANT &copy;&rarr;265(9) — SAFE PLACE FOR WORK—BURDEN OF PROOF.

Where a servant is employed to work upon a scaffold, and without any fault on his part such scaffold collapses, and thereby causes personal injury to him, the burden is upon the master to show that such scaffold was carefully constructed and reasonably safe.

*(Additional Syllabus by Editorial Staff.)*

4. DAMAGES &copy;&rarr;132(1)—EXCESSIVE DAMAGES—PERSONAL INJURY.

A verdict of $4,000, awarded a mechanic 32 years of age, with an earning capacity of $2 per day for personal injury of a painful and permanent nature, *held* not excessive.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Warmoth White against the Maison Blanche Company, and the Maison Blanche Realty Company in solido. Judgment for plaintiff against the Maison Blanche Company, dismissing the suit against the Maison Blanche Realty Company, and the Maison Blanche Company and the plaintiff appeals. Motion by the Maison Blanche Realty Company to dismiss plaintiff's appeal overruled, and appeals consolidated, and judgment affirmed.

George J. Untereiner, of New Orleans, for appellant. J. C. Henriques, Solomon Wolff, and Armand Romain, all of New Orleans, for appellees.

On Motion to Dismiss Appeal.

LECHE, J. The Maison Blanche Realty Company, one of the defendants in the above matter, moves to dismiss the appeal taken by plaintiff, on the grounds: (1) That it was only cited to answer the appeal, on May 28, 1917, although judgment was rendered May 4, 1916, and the order of appeal was signed May 3, 1917; and (2) that the bond of appeal is not attested and sworn to as required by the provisions of Act 112 of 1916.

[1] (1) Plaintiff's appeal was perfected on May 3, 1917, within the year. It then became the duty of the clerk of court to issue citation of appeal (C. P. art. 581), and the mere fact that citation issued and was served after the delays for an appeal had expired is not of itself cause for dismissing the appeal (Haggerty v. Annison, 133 La. 338, 62 South. 946).

[2] (2) Under section 9 of Act 112 of 1916, no appeal shall be dismissed for any inaccuracy or omission in the bond until the party furnishing such bond shall have failed to correct such inaccuracy or omission, which, under section 3 of the same act, he shall have the right to do within two days from service upon him of notice by the adverse party. It is not pretended that appellant was given any notice by appellee of insufficiency of the bond either in form or amount.

Believing, for these reasons, that the motion to dismiss is neither supported by the facts in the record nor by the law of the case, it is overruled.

On the Merits.

The present demand is for damages in the sum of $20,000 against the Maison Blanche Company, and the Maison Blanche Real-

ty Company in solido, and is predicated upon the same occurrence which formed the basis of the suit, No. 19520, of Ferdinand Francois v. Same Defendants, 134 La. 215, 63 South. 880, Ann. Cas. 1916B, 451, decided by this court on November 3, 1913.

The plaintiff, Warmoth White, together with a number of other workmen, was at the time of the accident engaged in breaking and taking down the plaster which formed the ceiling over the bottom floor of the Maison Blanche, a modern steel building in which is contained a large department store in the city of New Orleans. The tearing down of the old plaster overhead and replacing it with new plaster and kalsomining the same involved a great deal of labor, which had to be done most expeditiously in order to interfere as little as possible with the extensive business of the defendant company. In order to properly accomplish this purpose, large continuous platforms or scaffolds were erected under the ceiling to be repaired, the work was promptly started at 1 o'clock on a Saturday afternoon, and was to be steadily kept up night and day, so that it might be completed before the following Monday morning, when the store would be opened for business.

Plaintiff, while engaged as before stated, was in the employ of the Maison Blanche Company, and there is nothing in the record to connect the Maison Blanche Realty Company with his said employment, so that the latter company may be entirely eliminated in the discussion of the causes which brought about the injury for which he is presently seeking redress.

The renovation of the ceilings of defendant company's store was, after due preparation, undertaken on Saturday, August 20, 1910, about 1 o'clock in the afternoon. It is shown that the work was under the supervision of Mr. Medus, general manager for defendant company, that he was assisted by Mr. Romeo, a floorwalker, and that plaintiff was one of a gang of workmen under the immediate supervision of another workman, named Ballon, who was acting as foreman. The work progressed satisfactorily until about 8 or 8:30 o'clock in the evening, when, suddenly, that part of the scaffold, upon which plaintiff was at work, collapsed and plaintiff. with several other workmen, was violently precipitated to the floor below, thereby causing him to suffer a double fracture of the ankle. Plaintiff was immediately taken to the Charity Hospital, where he received medical attention, and later on he was removed to his home, where his injury kept him confined for nearly a year.

[3] The precise cause of the collapse of the platform or scaffold, upon which the plaintiff was at work, is the predominant and most contested issue in this case. The rule of law which admittedly governs, where a master employs a servant to perform work of this character, which of necessity is more or less hazardous, is that he must provide his employé with a reasonably safe place to do his work, and the fact that the employé without any fault on his part is thrown from his position by the collapse or breaking of the scaffold upon which he is directed to work places upon the employer the burden of proving that the accident was not the result of his carelessness or negligence. In other words, where a servant is placed in a position where he is directed to go, in order to perform his work, he has the right to assume, unless the danger is apparent, that the master has taken all necessary precautions to make the place reasonably safe; and if without fault on his part the servant gets injured, presumption arises that the place was unsafe, and the burden of proof is upon the master to show that he had performed the duty imposed upon him by law, of providing his servant with a reasonably safe place to perform his work.

The scaffold erected by the defendant company was built of "C" grade lumber about 16 to 18 feet high; it was supported by upright posts 4 inches square, spaced 8 to 12 feet apart; stringers or ledgers, 2 by 6 inches, were bolted to the top of the posts, and were reinforced by cleats, and the floor of the scaffold, consisting of boards 2 by 8 and 2 by 10 inches, rested on top of the ledgers. There were no slanting braces from the posts to the stringers, but the whole platform was braced by collars around the concrete columns which supported the ceiling. An expert testified that such a scaffold could safely support at any one point 5 to 6 men, but that it would be dangerous for 15 men to gather close together. There were some 70 workmen altogether engaged in the work, and they were scattered over the scaffold, which extended through the building.

Defendant in argument attached great importance to the fact that the workmen were repeatedly notified not to gather in groups and in numbers at any one particular place. That is borne out by the record, but Mr. Medus admits frankly that his purpose in keeping the men apart was to prevent them from loafing on the job, and not to insure the safety of the platform on which they stood. It nowhere appears that the workmen were warned of danger in case they should concentrate at any particular place on the scaffold. It is difficult to say from the testimony, which was taken at various times, from 2 to 4 years after the accident, how many men were gathered together, where the break occurred, but the preponderance of evidence seems to show that there were not more than six. Several of plaintiff's witnesses swear that the cause of the break was a large knot in one of the uprights, which so weakened the post that it could not support the weight of the five or six men who were near it, that they saw and examined the broken post immediately after the collapse of the scaffold, but that the broken pieces were taken away and disappeared. On the other hand some of defendant's witnesses contend that the break occurred in a ledger or stringer, and from this they conclude that it must have been overloaded. Either or both of these contentions may be true, but in the maze of claims and counterclaims of the parties and theories advanced by the experts as to the cause of the fall of the scaffold, one fact seems to stand out in bold relief, and it is, that the lumber out of which it was built must have been of inferior quality and not of sufficient strength to support the weight which it was designed to carry. The height at which the work had to be performed, the unusual strain to be sustained on account of the rapid movements of a large number of workmen, whose weight as well as that of the tools and materials necessary to properly do the work were all elements most suggestive to the prudent master of the necessity of using unusual precautions in properly constructing this scaffold. There was some expert testimony upon the subject of the grade and sizes of lumber ordinarily used in constructions of this kind and to the effect that on indoor work, "C" grade, provided it is pine, although inferior in quality, knotty, short-grained and sappy, is generally used for that purpose. The carpenter under whose supervision the scaffold under discussion was built testified in a general way that it was well built and sufficiently strong. But owing no doubt to the length of time which had elapsed since he had done this work, some 4 years before he gave his testimony, was unable to give specific details as to matters that should be peculiarly within the knowledge of the defendant. A careful analysis of the whole testimony leads to the irresistible conclusion that the plaintiff was not provided with a reasonably safe place to perform his work, and, therefore, that he is entitled to recover. In a supplemental brief, filed after the case was submitted, the defendant, Maison Blanche Company, attempts to escape

liability on the ground that, while it managed and supervised the work of renovating the ceilings in its store, it was only acting as the agent of the other defendant, the Maison Blanche Realty Company, for whose acts it is not responsible. This is a special defense, it was not pleaded, and even if it had any merit, it cannot now be raised for the first time in argument.

[4] The lower court rendered a judgment condemning the Maison Blanche Company to pay plaintiff the sum of $4,000, with legal interest from date of judgment, together with all costs, and dismissed the suit as against the Maison Blanche Realty Company. From this judgment two separate appeals were taken, one by the Maison Blanche Company, filed under number 22062, and the other by plaintiff, under the number 22650, and on motion of plaintiff they were afterwards consolidated. The amount of damages fixed by the trial judge was not contested in this court. Plaintiff at the time of the accident was about 32 years of age, a mechanic with an earning capacity of $2 per day. His injury was painful, and is of a permanent nature, and no reason is shown or even suggested why this amount should be changed.

It is therefore ordered that the judgment appealed from be affirmed, the Maison Blanche Company to pay costs in the appeal docketed under the number 22062, and plaintiff to pay costs in that docketed under the number 22650.