25 So.2d 282

**THORNTON v. ELLINGTON.**

No. 37833.

Supreme Court of Louisiana.

Feb. 11, 1946.

Watson & Williams, of Natchitoches, for Harvey B. Thornton, plaintiff-appellant.

Russell E. Gahagan, of Natchitoches, for C. J. Ellington, defendant-appellee.

HAWTHORNE, Justice.

Plaintiff, Harvey B. Thornton, instituted this suit, praying to be recognized as the owner of an undivided one-half interest in a certain plantation situated in Natchitoches Parish, Louisiana, containing 2,375 acres more or less, and praying that an alternative writ of mandamus issue herein directed to defendant, C. J. Ellington, commanding him to execute and deliver to plaintiff a good and valid deed conveying to plaintiff an undivided one-half interest in said plantation, provided that plaintiff pay unto defendant one-half of the purchase price and assume an undivided one-half of the amount of a mortgage against the plantation.

Plaintiff's petition alleges that he and the defendant Ellington formed a partnership to purchase the property in question from Gilbert B. Davis, and that pursuant to said agreement an option was taken from Davis in which he agreed to sell the plantation to Ellington; that said option was taken in the name of Ellington for convenience only, and that of the consideration of $1,000 named therein each paid $500; that plaintiff and Ellington had a written agreement that the property was being bought for their joint account, and that they were to be equal owners thereof, each to pay one-half of the purchase price, and that this agreement was signed by both plaintiff and defendant. in the presence of two witnesses; that Ellington on October 6, 1944, took title to the property in his own name instead of in the names of petitioner and himself, said sale being made without the knowledge of petitioner; that Ellington reported to an agent of petitioner that the sale had not been consummated and would not be consummated for a week or 10 days, when as a matter of fact the sale had already been completed and the deed evidencing the sale had been duly recorded in the conveyance records of Natchitoches Parish; that the defendant now refuses to convey to plaintiff a one-half interest in the property, notwithstanding the fact that plaintiff is ready, willing, and able to pay his half of the purchase price together with one-half of all costs incurred in making said sale, and has offered to pay this amount to the defendant.

Defendant answered plaintiff's petition, admitting the existence of the agreement and admitting that plaintiff did pay $500 as his part of the price of the option, but alleging that plaintiff never did put up any additional money and was never able to raise his one-half of the purchase price and for that reason forfeited all rights that he may have had in the matter. Defendant further admits the execution of a written agreement with reference to the purchase of the property but avers that said document itself is the best evidence as to its contents, and, further, that he did take title to said property in his own name on October 6, 1944, and paid the entire purchase price of $51,500 in cash. Defendant denies, however, that he took title to said property without the knowledge of plaintiff, and avers that, due to plaintiff's inability to pay his one-half of the purchase price, he, defendant, postponed the execution of the deed from October 2 to October 6, and that the agreement

between these parties with reference to their ownership was signed and executed between October 2 and October 6 and was for the purpose of giving the plaintiff additional time in which to raise his portion of the purchase price.

Defendant admits also his refusal to deed to plaintiff an undivided one-half interest in the plantation and denies that plaintiff stands ready, willing, and able to put up his portion of the purchase price, and further denies that plaintiff has offered to pay his share thereof. All other allegations of plaintiff's petition are denied.

No exceptions of any nature were filed in the court below, and the case was tried on its merits on the petition of plaintiff and the answer of defendant. The trial judge, after hearing all the testimony of the witnesses and after considering all the evidence, rendered judgment rejecting plaintiff's demands at his costs. From this judgment plaintiff appealed.

During the trial of the case in the lower court, the following facts were disclosed:

Plaintiff Thornton and defendant Ellington agreed between themselves to purchase a certain plantation situated in Natchitoches Parish, containing 2,375 acres more or less, for the price and sum of $52,500 in cash, each to pay one-half of the purchase price thereof. Pursuant to this agreement, on August 3, 1944, G. B. Davis, the owner of said property, gave an option to C. J. Ellington for the purchase of the property, and on this date plaintiff and defendant paid to Davis the sum of $1,000 for this option, each paying $500 of the

amount thereof. The option was taken in Ellington's name for convenience only, since Thornton knew certain persons in the State of Texas to whom he believed he could sell the plantation and was of the opinion that he could dispose of the property to better advantage if his interest did not appear of record. In the event the option was exercised, the $1,000 paid therefor was to be applied on the total purchase price. This option provided that Davis, the owner of the property, would have 60 days within which to furnish abstracts of title, and that Ellington would have 30 days in which to have these abstracts examined by his attorney and a written opinion rendered thereon, and that, should there exist any defect in the title to any portion of the land embraced within said plantation, the owner thereof, Davis, would then have 30 days within which to cure such defects, and that, upon final approval by the attorney for Ellington, the act of sale would be passed between the parties and the purchase price paid.

Mr. Russell Gahagan, of Natchitoches, La., was retained by Mr. Davis to furnish the abstracts, and Mr. K. Hundley, of Alexandria, La., was retained by Mr. Ellington to approve the title. Before the completion of this work, Mr. Ellington began negotiations with the Federal Land Bank for a loan of $35,000 to be secured by a mortgage on the property in question, and, as it was more convenient for Mr. Gahagan to approve the title for the Federal Land Bank, he being an approved attorney for this institution, Mr. Ellington and Mr. Hundley agreed that Mr. Gahagan should

do all of the title work. On September 16, 1944, Mr. Gahagan transmitted to the Federal Land Bank complete abstracts covering the property and stated that in his opinion the title to said property was in the vendor, G. B. Davis.

On September 28, Mr. Davis, the vendor of the property, made a trip to Alexandria to see Mr. Ellington in order to ascertain just what he intended to do with reference to the purchase of the property, and he was requested at that time by Mr. Ellington to meet him in the office of Mr. Gahagan in Natchitoches on the following Monday, October 2, for the purpose of executing the deed and receiving the purchase price therefor.

Under date of September 30, the Federal Land Bank through its attorney advised Mr. Gahagan by letter that the title to the property was good. This letter, however, which is found in the record, set forth certain requirements or curative work to be done, 10 or more items, such as affidavits of possession, marital status, etc.

On Sunday morning, October 1, plaintiff, Harvey B. Thornton, called at the home of Mr. Gahagan in the Town of Natchitoches, and on this occasion Thornton was told by the attorney that the deed to the property was to be executed the next day, Monday, October 2, and that both Mr. Davis and Mr. Ellington would be in Natchitoches and would call at his, Gahagan's, office for this purpose; that Davis, the vendor, had stated to him that he could sell the property for a better price, and that it made no difference to him whether the deal went through or

not. Thornton advised Mr. Gahagan at that time that the deal could not be closed on the next day, but would be closed some time during the next week. According to Gahagan, Thornton gave as his reason for requesting the postponement the fact that he had another big deal, to sell some 26,000 acres of land, which he had to attend to first. However, Thornton denies that this was his reason for stating that the deed could not be executed on Monday, October 2.

According to Gahagan, he then requested Thornton, who was on his way to Alexandria, to get in touch with Mr. Ellington, and, if the deal was not going to be closed the next day, October 2, to have Ellington call him, Gahagan, by telephone. Thornton testified that he had no recollection of such a request. However, on Sunday night between 8:00 and 9:00 o'clock, Ellington telephoned Gahagan and informed him that he had seen Thornton and discussed the matter with him, and that Thornton was not ready to close the deal. Ellington asked Gahagan to get in touch with Mr. Davis and postpone the matter until Friday, October 6, and stated that on this date he would be in Mr. Gahagan's office for the purpose of executing the deed and paying the purchase price.

During the conversation between Gahagan and Thornton on Sunday morning, the attorney informed Thornton that the deed had already been prepared with Mr. Ellington as the vendee, but that, when the matter was closed, Thornton could put up his share of the purchase price and assume one-half of the Federal Land Bank mort-

gage, and Ellington could at that time execute a deed conveying to him an undivided one-half interest in the property. Thornton admits that during this conversation Gahagan informed him that he had received a letter in the morning mail from the attorney for the Federal Land Bank, advising him that the title was good and that the papers for closing the loan would be in Gahagan's office the following week, but this letter requested certain curative items which Gahagan informed Thornton would be furnished on the next day, Monday, October 2.

On Monday, October 2, Mr. Davis called at the office of Mr. Gahagan and was requested at that time to return on Friday, October 6.

According to the testimony of Mr. Ellington, Mr. Thornton called to see him at his office between October 2 and October 6 and stated that he would not be ready to close the deal on Friday, October 6, and requested Ellington to get in touch with Mr. Davis and Mr. Gahagan and ask a further postponement. Ellington at that time informed Thornton that the matter could not be postponed any further, and that he was going to Natchitoches on Friday, October 6, to sign the deed and pay the purchase price.

Ellington testified that shortly after this conversation Mr. S. R. Cummins called him by telephone and told him that Thornton was with him in his office, and requested Ellington to ask a further postponement in the closing of the deal to purchase the plantation; that he informed Mr. Cummins that no additional extension

could be granted, and that he was going to Natchitoches for the purpose of closing the deal on Friday, October 6; that Mr. Cummins requested him at that time, even though he should close the deal and pay the entire purchase on October 6, to give Thornton additional time in which to raise his portion of the purchase price; that at Mr. Cummins' request he agreed to extend the time for Thornton to pay his portion of the purchase price until Monday, October 9; that Mr. Cummins then informed him that he would prepare an agreement to this effect and bring it to Ellington's office to be signed, and that Ellington agreed to sign it.

This agreement was presented to Ellington after having been signed by Thornton, and Ellington signed it in the presence of two witnesses.

According to Mr. Cummins' testimony, Thornton called at his office and requested him to type this agreement, and that, after typing it, he carried it to Mr. Ellington's office for his signature. This agreement reads as follows:

"Alexandria, Louisiana
"October 4th, 1944

"Mr. C. J. Ellington,

"City.

"Dear Sir:—

"This is an instrument drawn for the purpose of you recognizing Harvey Thornton as being equal owner of the 'Davis Place' located at Clarence, Natchitoches Parish, Louisiana, which we have under contract and agreement, and, that Harvey Thornton has until Midnight, 12 o'clock, Monday, October 9th, to put-up his part of the money

in cash, providing, that, the Federal Land Bank has accepted the title as merchantable, and, in the event the said Thornton does not appear at the Guaranty Bank & Trust Company, Alexandria, Louisiana, with the money, he agrees to forfeit all rights and title, including the earnest money in amount of Five Hundred ($500.00) Dollars.

"Witnesses:

"C. A. Rebouche      "Harvey B. Thornton
"S. R. Cummins       "C. J. Ellington

"State of Louisiana
"Parish of Rapides

"S. R. Cummins, being by me first duly sworn, deposes and says: That he is one of the attesting witnesses to the above and foregoing instrument; that he saw the parties thereto sign the same of their own free wills and for the purposes therein stated.

"S. R. Cummins

"Sworn to and subscribed before me at Alexandria, Louisiana, on this the 10th day of October, 1944.

'S. O. Spengler
"Notary Public."

On Friday, October 6, Ellington met Davis in the office of Mr. Gahagan in the Town of Natchitoches, paid the balance of the purchase price, $51,500, for the property, and both parties signed the deed which conveyed the plantation to C. J. Ellington, defendant in this suit. This deed was filed for record in the Parish of Natchitoches on October 6.

Later in the same day, the mortgage papers from the Federal Land Bank reached Gahagan's office, and Ellington, who had

not left Natchitoches, duly signed these papers, which were then returned to the Federal Land Bank, and Ellington was informed that the check for the amount of the loan would come forth within the next few days.

Thornton testified that he had no knowledge that the deed conveying the property to Ellington had been executed until a few days thereafter, when he came to Natchitoches for the purpose of filing the agreement signed by him and Ellington, which agreement was filed on October 10. He states that at this time the clerk of court, Mr. Swett, informed him that the deed to Ellington had been filed for record.

Shortly thereafter Thornton instituted this suit and during the trial of the case on its merits and in open court tendered to Ellington the sum of $9,250 as one-half of the balance due on the cash consideration paid by Ellington after the amount of the Federal Lank Bank mortgage was deducted. There is some controversy between counsel as to whether this was the correct amount. However, Ellington testified that he would not have accepted the tender and conveyed an undivided one-half interest in the property to Thornton even if it were the correct amount.

The agreement dated October 4, signed by both plaintiff and defendant and quoted hereinabove, is the principal basis of this suit, and the sole question before us is whether or not the plaintiff Thornton was justified in his failure to pay his one-half of the purchase price by midnight, Monday, October 9.

As justification for his failure to pay his portion of said purchase price, Thornton contends that the defendant herein informed his agent, S. R. Cummins, on October 9 that the title had not yet been approved, and that some curative work remained to be done thereon. For this reason plaintiff contends in brief that the deadline set for the payment would have had to have been extended. Although he does not state in brief how long an extension was to have been granted, we take it that his meaning was that, pursuant to the terms of the agreement hereinabove quoted and discussed, he was entitled to an extension until such time as the defendant should inform him that the Federal Land Bank had accepted the title to the property as merchantable.

To prove this contention, he relies principally on the testimony of Mr. S. R. Cummins, the person meant by the term "agent of petitioner" used in the petition, and who in truth and in fact was Thornton's representative and agent in his dealings with Ellington after October 4.

Mr. Cummins testified that on October 9 he called Ellington by telephone with reference to the matter, and that Ellington informed him at that time that the title work had not been completed and that there was some more curative work to be done. Ellington denies this emphatically, and even denies talking with Mr. Cummins over the telephone on that date.

The trial judge, who heard the testimony of the witnesses and observed the manner in which they testified, stated in a written opinion that he was unable to accept the testimony of Mr. Cummins that Ellington had told him on October 9 that title had not been approved.

A careful analysis of the entire record convinces us that the plaintiff Thornton knew full well that the first date fixed for the execution of the deed was Monday, October 2, and knew that the Federal Land Bank had approved the title as merchantable, subject to certain minor curative work, and we are convinced that due to his inability to pay his part of the cash consideration on this date, the execution of the deed was postponed at his request until October 6. We are convinced that just prior to October 6 he was still unable to meet his obligation; that, when Ellington refused to ask for a further extension of time for closing the transaction, Thornton had the document dated October 4 drawn up in an effort to extend the time for paying his share of the consideration beyond October 6; that this document did extend the time in which he could raise his portion of the purchase price until midnight of October 9, and that he was fully informed by Ellington that the deed was to be executed on Friday, October 6.

All of Thornton's actions indicate that he was playing for time, attempting to delay the final closing of the transaction, because he himself did not have his share of the purchase price. The judge of the lower court was of this opinion, with which we agree, and he pointed out that Thornton admitted that he had not made a dollar since he came to Louisiana on December 22, 1928.

Plaintiff in brief contends that he and Ellington originally had a partnership, a joint adventure, to buy this particular plantation; that, this being true, Ellington owed to Thornton all of the duties and obligations which one partner owes to another; that their relation was fiduciary in character and imposed upon all the participants the obligations of loyalty to the joint concern and the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise; that Ellington owed Thornton the strict duty of advising him when the title was approved by the Federal Lank Bank and of advising him as to exactly when he, Ellington, intended to take title from Davis; that Ellington was under the duty of advising him of the exact time the Federal Lank Bank loan was consummated, and, even further, was under the duty of notifying him when it was time for his half of the money to be advanced. In support of these contentions he cites numerous authorities.

Conceding that the authorities cited are true expressions of the law, we are of the opinion that the plaintiff Thornton was fully informed of each and every step in the entire transaction, and that the defendant Ellington faithfully discharged the duties imposed upon him by law.

In this connection, Ellington testified positively that on Monday, October 9, he met Mr. Cummins, agent for plaintiff herein, in the Guaranty Bank & Trust Company in Alexandria, and asked the whereabouts of Thornton, and that he at that time told Cummins, among other things, that the Federal Land Bank had approved title to the property. Cummins admits meeting Ellington in the bank but states that he has no recollection of the date of the encounter and no recollection of any conversation such as Ellington described.

An issue of fact only is involved in this case, and the lower court found that the plaintiff Thornton had failed to comply with his obligation to pay one-half of the purchase price prior to midnight, October 9, 1944, and thereby forfeited all rights which he may have had under the agreement between these parties dated October 4, 1944.

In the original trial of a case, the district judge has the witnesses under his observation and hears them testify. For this reason he is more capable of correctly resolving the facts than the appellate court. Hence the rule that his finding of facts is entitled to great weight. Since in this case only an issue of fact is involved, appellant, plaintiff below, for reversal must show the judgment of the trial court to be manifestly erroneous, and this he has failed to do. Guillory et al. v. Fontenot, 170 La. 345, 127 So. 746; Kruse v. Kruse, 175 La. 206, 143 So. 50; Wagner v. Shannon, 180 La. 233, 156 So. 289; Lejeune v. Lejeune, 187 La. 339, 174 So. 643; Falgout v. Johnson et al., 191 La. 823, 186 So. 349.

For the reasons assigned, the judgment appealed from is affirmed at appellant's costs.