44 So.2d 822

ROY v. LOUISIANA STATE DEPART-
MENT OF AGRICULTURE & IMMI-
GRATION.

HARTFORD FIRE INS. CO. v. LOUISIANA
STATE DEPARTMENT OF AGRICUL-
TURE & IMMIGRATION.

ANGELLE v. LOUISIANA STATE DE-
PARTMENT OF AGRICULTURE &
IMMIGRATION.

Nos. 39547–39549.

Jan. 9, 1950.

Rehearing Denied Feb. 13, 1950.

Bolivar E. Kemp, Jr., Atty. Gen., Carroll Buck, First Asst. Atty. Gen., Adolph Menuet, Jr., Sp. Asst. Atty. Gen., for defendant and appellant.

Voorhies & Labbe, Lafayette, Breazeale, Sachse & Wilson, Baton Rouge, Chaffe, McCall, Bruns, Toler & Phillips, New Orleans, for plaintiffs-appellees.

MOISE, Justice.

These actions by Arthus Angelle, Jr., Cyprien Roy and the Hartford Fire Insurance Company (as subrogee of Texas and New Orleans Railroad Company) were instituted against the State of Louisiana for the recovery of value of property destroyed in a fire which resulted from certain spraying operations conducted by agents of the Department of Agriculture. The suits have been before this Court previously, having been instituted without Legislative authorization, on the theory that the property was used by the Department of Agriculture for a public purpose and that plaintiffs were entitled to damages for its destruction. We held that the cause of action is founded in tort and by reason of the provisions of Article I, Section 2 of the Constitution of 1921, the State cannot be sued without its consent. Angelle et al. v. State 1948, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666.

The plaintiffs, having obtained by virtue of Acts Nos. 217, 218 and 219 of 1948 waiver of the State's immunity from suit, brought the present suits, which were consolidated in the district court and submitted on the evidence taken in the initial actions. From separate judgments of damages in favour of each plaintiff, defendant prosecutes this appeal.

There is no dispute as to the facts, which are set forth in plaintiffs' brief as follows:—

"After the adoption of Act 314 of 1926, the Sweet Potato Weevil Eradication Act, the Department of Agriculture promulgated regulations and instituted and conducted a systematic program for the eradiction of the sweet potato weevils in such territories as were declared by Mr. W. E. Anderson, the State Entomologist, to be control area. In July, 1944, the Parish of Lafayette was within the sweet potato weevil quarantine area and buildings and premises used in processing, handling, and shipping sweet potatoes came under the effect of the eradication program. Under this program, the Department maintained five or six trucks equipped with portable spraying units. Upon request, the Department would send one of the trucks to the location to be disinfected,

and conduct the operations with its own employees. The owner of the property was required under the regulations to pay for the disinfectant to be used. It was not compulsory for the owner to employ the facilities provided by the Department. Nevertheless, as testified by Mr. Anderson, the Entomologist, sweet potato processors have invariably taken advantage of the free service supplied by the Department. In fact, without the State's supplying this service, there could be no general eradication program.

"The railroad station belonged to the Texas & New Orleans Railroad Company; the company leased a portion of this long platform to Arthus Angelle, Jr., which was used by him in processing sweet potatoes for shipment; likewise, Cyprien Roy used a portion of the platform. Each one of these petitioners had processing equipment, supplies and some potatoes located on this platform. In addition thereto, plaintiff Angelle had a sweet potato kiln adjoining the railroad platform which was filled with empty sweet potato crates. The premises designated for disinfection on the day of the fire was the railroad property. Plaintiff Roy and Angelle were not parties to this arrangement for spraying.

"Since it was compulsory that the railroad premises be disinfected before the beginning of the processing and shipping season, the agent of the railroad station arranged with the District Representative of the Department of Agriculture, Mr.

Lott, for him to send his men to spray the premises. The railroad agent secured the spray material and notified the Department's District Representative. On July 13, 1944, the Department's agents came to the station with their equipment and began spraying the premises with the material that was in the drums which had been pointed out to them by the railroad agent, which presumably was kerosene. *The emulsion of kerosene, the safe ingredient,* was not used.

"Nolan Campbell and Galbert Ortego, the Department's employees, were in sole and complete control of the operation of the equipment on the day of the fire.

*"Neither the railroad agent nor Angelle or Roy or any of their employees were present during the spraying.*

"After the two employees had sprayed for a half hour or an hour, they noticed that the fluid container on their truck was running empty; the manner in which they noticed this fact is that the pressure becomes weak, the pressure pump misses, and the motor runs faster. Campbell, who was operating the nozzle at the end of the hose, shut it off and then turned around to walk toward the truck to refill the container; as he walked toward the truck he saw a small fire on the rear platform of the truck on or near the gasoline engine. Oretgo saw the fire immediately, saying that he first saw a *small fire on the engine* on the platform of the Department's truck. As they ran toward the truck, the fire spread.

*The only thing that they did was to remove their clothing from the truck. The Department's truck was not equipped with a fire extinguisher; and the Department's agents, after noticing the fire, did not remove the hose from the railroad platform. The hose that leads from the truck to the platform served as a bridge for the fire to spread from the truck to the platform."* (Italics mine.)

The facts being agreed on, the sole question presented for our determination is whether they warrant a finding of negligence on the part of the State acting through its agents.

The various acts of negligence charged against the State may be summarized as follows:

The Department of Agriculture possessing a knowledge of the inflammability of the spraying preparation superior to plaintiffs' knowledge (in all spraying operation, an *emulsion* of kerosene should be used, and not *pure* kerosene), its agents should have taken proper safety precautions in conducting such a hazardous operation with a volatile, inflammable substance. Further, notwithstanding the Department's knowledge of the comparative merits of spraying preparations, it instructed its employees and agents *to use kerosene.*

The record shows that no great diligence was exercised in the operations, and unnecessary chances were taken in performing this highly hazardous work, for the employees rolled a heavy drum of kerosene to the edge of the railroad platform and transferred it directly through an opening at the top of the drum into a container which was on the bed of the track, one of them stating that "this was the only occasion on which this operator poured the kerosene from the metal drum into the container." The observation of the learned district judge in his reasons for judgment—"It is probable that kerosene was spilled in the transfer"—is justifiable as a matter of reason, because the stated facts give rise to an inference of negligence.

The jamming together of the equipment used on the wooden-floored rear of the truck (itself saturated with kerosene) in proximity to a malfunctioning gasoline engine bespeaks negligence, particularly on a hot summer day when the property of kerosene to vapourize would increase and particularly since the kerosene barrel had an open top, through which in all probability the kerosene splashed as it was agitated. The barrel which contained the spraying fluid had a 10″ by 12″ hole at the top, over which was thrown a piece of burlap. Inside the barrel was a makeshift blade on a shaft going through the ends of the barrel, which was used to agitate the fluid. The barrel was immediately behind the cab of the truck; in the back of the barrel, to one side, was the compressor and to the other side, a gasoline engine with an exhaust pipe pointing downward in the di-

rection of the open-topped kerosene barrel.

A consummation devoutly to be wished for is to so carry on such work as to have it at all times under control from fire or other casualty. The truck of the operating unit was not equipped with a fire extinguisher to control any fire that might originate on the truck or in the premises as a result of the operation. It would seem that for the protection of the property of the citizens and for protection of the employees themselves that they would have a fire extinguisher on the appliance above described. On the day of the fire none of the State employees were present looking after the truck and its operation on the outside, and another significant fact is that none of the agents or employees of plaintiffs were present at the time of the fire. The agents and employees of the plaintiffs could not give any testimony as to the cause of the fire, because they were not present. After the fire began on the truck, the employees of the defendant did not remove the hose which led from the truck to the platform, *which actually formed a bridge for the spread of the fire.* We are of the opinion that the plaintiffs have met the burden of proof required to substantiate their charges of negligence.

The elucidation of legal principles applied to facts in other decisions of this Court will aid us in applying the law to the facts of the case here.

In Gerald v. Standard Oil Company of Louisiana, 204 La. 690, 699, 16 So. 2d 233, 236, our Court said:

"Res ipsa loquitur is often found to be appropriate in cases involving explosions. It is not a rule of pleading or of substantive law; rather, it is a rule of evidence, the applicability of which is to be determined on the conclusion of the trial. As said in Lykiardopoulo v. New Orleans & C. R. Light & Power Company, 127 La. 309, 53 So. 575, 576, Ann.Cas.1912A, 976:

"'* * * In cases where the plaintiff cannot be expected to have any *information as to the causes of the accident,* whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itself—res ipsa loquitur—that is to say, that a presumption of negligence arises from the fact itself of the accident. In such cases, the *plaintiff not only need not allege the paritcular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie case, and the burden is on defendant to show absence of negligence.* * * *'" (Italics mine.)

In Dotson v. Louisiana Central Lumber Co., 144 La. 78, 83, 80 So. 205, 207, the Court held:

"Although the general rule of law is that a plaintiff who claims damages must allege and prove the facts necessary to establish the negligence of defendant, upon which he predicates his demand, it is equally a well-recognized exception to that general rule that, where the cause of the accident by which the damage was inflicted is more properly within the knowledge of defendant, the accident itself makes out a prima facie case, and the burden is upon the latter to show absence of negligence. Res ipsa loquitur. Lykiardopoulo v. New Orleans & C. R. Light & Power Co., 127 La. 309, 53 So. 575, Ann.Cas.1912A, 976; White v. Maison Blanche Co., 142 La. 265, 76 So. 708. According to R. C. L. vol. 11, p. 955, par. 13, there is much apparent conflict of authorities whether there arises a presumption of negligence on the part of occupant of a building, where it is destroyed by a fire originating inside of it and in an unusual manner. If no such presumption exist, *plaintiff should allege the particular facts from which the defendant's negligence may be inferred;* but if, on the other hand, there arises a presumption of negligence on the part of a defendant who occupies the building and absolutely controls its use, from the mere fact that a fire has originated therein, then the proof of absence of negligence is upon the defendant, and there is no reason why a plaintiff should allege that which he is not called upon to prove. At page 954, par. 12, of the same volume, we find:

" 'Since in the absence of statute to the contrary negligence or misconduct is the gist of the action to recover damages for setting or permitting the spread of fire, such negligence or misconduct is an essential element in the pleadings as well as in the proofs. In accordance with the general rule in actions based on negligence, an allegation of the defendant's negligence in general terms will, it seems, be sufficient without setting out the specific acts relied on as the basis of plaintiff's action.' " (Italics mine.)

██ We do not need to predicate this decision on res ipsa loquitur, which is merely a rule of evidence that shifts the burden of proof from a plaintiff to a defendant, but rather on common sense and natural justice—that he who causes damages to another is bound to pay for them. The district judge found that there was proof of negligence with reasonable certainty. That judge who saw and heard these witnesses felt that plaintiffs had made out a case. We do not need to go into the question of the quantum of damages because such amount awarded in these judgments has not been contested. In a case so circumscribed, the judgment of the district court on a question of fact should not be disturbed unless manifestly erroneous. McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21; Barnes v. Le Blanc, 207 La. 989, 22 So.2d 404; Thornton v. Ellington, 209 La. 613, 25 So.2d 282; Martin v. Martin, 212 La. 1092, 34 So.2d 329.

The judgment appealed from is hereby amended by disallowing the payment of court costs by the State to these plaintiffs, and in all other respects, as amended, the judgment is affirmed.

McCALEB, J., being of the opinion that the doctrine of res ipsa loquitur is applicable, concurs in the decree.