GLADNEY, Judge.
This is an action in tort by Mrs. Nora Bryant, a widow eighty years of age, to recover damages occasioned by personal injuries received while a passenger in the automobile being driven by her daughter, Mrs. Ila Bailey Simmons, which vehicle was involved in a collision with the truck owned by the Ouachita Coca-Cola Bottling Company, Inc. and being driven at the time of the accident by Jerry A. Adams. The collision between the two vehicles occurred at the intersection of Louisville Avenue and Walnut Street in the City of Monroe, Louisiana, at about 7:00 o’clock A. M. on August 13, 1956. Made parties defendant are Roy Simmons and his liability insurer, Allstate Insurance Company, and Ouachita Coca-Cola Bottling Company, Inc. and its insurer, American Employers Insurance Company. (Through error The Employers Liability Assurance Corporation was originally named a defendant but by a joint motion of counsel for plaintiff and Ouachita Coca-Cola Bottling Company, Inc., American Employers Insurance Company was substituted in lieu of The Employers Liability Assurance Corporation, Ltd.)
The petitioner, Mrs. Nora Bryant pleaded she was entitled to invoke the rule of res ipsa loquitur and then pleading alternatively, alleged the negligence of the drivers of both vehicles in not exercising proper care, control and lookout before entering the intersection and charges each with having proceeded therein upon an unfavorable light. The defendants, Roy Simmons and Allstate Insurance Company filed a joint answer in which they adopted Mrs. Bryant’s charges of negligence directed against the driver of the truck, and alleged that Mrs. Simmons entered the intersection upon a favorable light and had proceeded past the center of the intersection when her vehicle was struck by the truck which drove into the intersection upon a red light, at an unlawful rate of speed. They aver there was no negligence on the part of Mrs. Simmons. The remaining defendants, Ouachita Coca-Cola Bottling Company, Inc. and American Employers Insurance Company, alleged Adams was free of any act of negligence and charged the sole and proximate cause of the accident was the negligence of Mrs. Simmons in entering the intersection upon a red light and not being properly observant of traffic moving through the intersection with a favored light.
Upon the issues so presented the case went to trial after which the district court in a careful and thorough opinion decided the drivers of both vehicles were negligent and rendered judgment in solido against all defendants in the sum of $3,815. From the judgment all defendants have appealed. The plaintiff has answered the appeals and asked that the award be increased to $5,000.
The facts relating to the accident have been fully and accurately set out in the opinion of our brother of the district court and we adopt his statement thereof with a minor correction and one unimportant deletion. In the written opinion reference is had to the testimony of Jack Davis, traffic manager of the police department of the City of Monroe, and therein he is quoted as stating the semaphore light at the subj ect intersection showed a thirty-three second green signal on Louisville. We find from our examination of the record the words “thirty-three second” should read “thirty-six second”. From the written opinion, we quote:
“On the morning of August 13, 1956, at approximately 7:00 A.M. the plaintiff and a party of her friends and relatives had planned an all-day fishing excursion on a lake east of Monroe. The party was traveling in three automobiles. Two men in the first automobile had gone to the lake earlier and are not witnesses to the accident. The second car, the car in which the plaintiff was riding, was being driven by Mrs. Ila Bailey Simmons. In the front seat with Mrs. Simmons was plaintiff, Mrs. Nora Bryant. Immediately behind the driver was Mrs. Cora Simmons. On the back seat, *155 sitting in the middle was Gloria Simmons, a child seven years of age and to her right on the back seat was her sister, Lillie Faye Simmons, age six, the two children being the daughters of Mrs. Ila Bailey Simmons and Charles Roy Simmons. The third car was being driven by Mrs. Beatrice Wilson. In the front seat with the driver was Mr. Patón M. Ray. On the left side of the back seat behind the driver was Mrs. Mary Ray, wife of Patón M. Ray. To her right on the back seat was a little girl who was caring for Mrs. Wilson’s baby. All the parties lived in West Monroe. Mrs. Wilson’s automobile left the home and proceeded first to the ice plant in West Monroe. While Mrs. Wilson’s car was at the ice plant, the car driven by Mrs. Ila Bailey Simmons passed her and crossed the bridge into Monroe. As Mrs. Simmons arrived at the eastern end of the bridge, she was in the south lane of traffic. About the middle of the block, between Riverside and Walnut Streets, she stopped at the curb and waited for the Wilson car to come across the bridge. When the Wilson car arrived at the point where Mrs. Simmons was parked, Mrs. Wilson blew her horn and Mrs. Simmons pulled into the north lane of the eastbound traffic. As she pulled into the north lane, a Ford automobile came into the lane of traffic behind the Simmons car and in front of the Wilson car. The Simmons car proceeded east toward the intersection of Walnut Street and Louisville Avenue with the Ford car behind her and behind that car, Mrs. Wilson’s car. As Mrs. Wilson’s car proceeded easterly behind the car in front, two automobiles, first a jeep being driven by W. L. Brooks, and then a Chevrolet being driven by Dale Meachum, passed her in the south lane of the eastbound traffic, traveling toward the intersection. At approximately the same time, the Coca-Cola truck, being driven by Jerry A. Adams, with two colored helpers, Arthur Wilson, sitting in the middle and Calvin McGraw, Jr., sitting on the right or outside in the cab with him, was proceeding north on Walnut Street toward the intersection at about ten or fifteen miles per hour. When the accident happened, the Plymouth automobile, being driven by Mrs. Ila Bailey Simmons, had proceeded into the intersection and was on the east side when her car was struck just behind the front door by the Coca-Cola truck.
“The witnesses are all in accord in stating that the truck was in its right lane of traffic and the Plymouth automobile was immediately east of the traffic light, at the time of the impact. The witnesses are all hopelessly at odds as to the color of the traffic light on Louisville and on Walnut Street at the time of the accident.
“Mrs. Ila Bailey Simmons stated that as she approached the traffic light, going east on Louisville Avenue, that the light was red and that she stopped and waited for it to change; that it changed from red to caution and from caution to green and that after it had changed to green she proceeded slowly into the intersection. She further stated that she was watching the light at all times and was not looking to the right or left for traffic on Walnut Street.
“Mrs. Cora Simmons who was in the car with Mrs. Ila Simmons, stated that she was sitting on the edge of the back seat behind the driver, leaning forward toward the driver; that she saw the Coca-Cola truck coming into the intersection but thought it was going to stop. She corroborated Mrs. Ila Simmons as to the condition of the light and further stated that after the light changed to green that she urged Mrs. Ila Simmons to go on. Further in her testimony she stated that as they approached the traffic light that there was an automobile in front of them which entered into the intersection immediately before it turned red for Mrs. Ila Simmons; that the car in front got by the light but that Mrs. Ila Simmons was caught and had to stop.
“The testimony of the plaintiff, Mrs. Nora Bryant, as to the condition of the traffic light was substantially that of Mrs. Ila Simmons. Mrs. Ila Simmons’ testimony *156 as to the condition of the light was also corroborated by the child, Gloria Simmons. At the time of the trial of this case, the other child, Lillie Faye Simmons, was ill and unable to testify.
“Mrs. Beatrice Wilson stated that Mrs. Ila Simmons, the Ford car in front of Mrs. Wilson, and Mrs. Wilson all stopped for the red traffic light; that when the light turned green for traffic on Louisville, she saw Mrs. Ila Simmons proceed into the intersection and that the car in front of her did not move and she blew her horn for the driver to start up. At about the same time she saw the Coca-Cola truck moving north on Walnut Street and said to the others: ‘Oh, my God! the truck’s gonna hit them people.’
“Beatrice Wilson’s testimony as to the condition of the traffic light was corroborated by that of Mr. Patón M. Ray and Mrs. Mary Ray, who were riding in the car with her.
“Mrs. Evelyn Traweek stated that she lived in West Monroe at the time of the accident and that earlier in the morning she and her child had taken her husband to work in Monroe; that they were returning home and proceeding west on Louisville Avenue in the north lane of traffic; that at the time of the accident she was between North Second and North Third Streets; that the traffic light at North Second Street was green and that she continued to proceed west through the intersection of Walnut Street and Louisville Avenue, the north lane remaining clear for traffic and on past the intersection at Riverside and Louisville on the bridge. She stated that she never stopped her car.
“Mr. Jack Davis, traffic manager of the Police Department of the City of Monroe, testified that at the time of the accident that the traffic lights at North Second and Louisville Avenue and at Walnut Street and Louisville Avenue were on the same switch and that the lights showed a thirty-six second green signal on Louisville, a three second caution, followed by a twenty-four second red signal.
“Mr. Jerry A. Adams, driver of the Coca-Cola truck stated that he was proceeding north on Walnut Street toward the intersection at or about fifteen miles per hour. In the cab with him was Arthur Wilson and Calvin McGraw, Jr.; that his truck was fully loaded and that he did not stop before entering the intersection; that when he was about 80 to 100 feet from the intersection the light changed to green facing Walnut; that as the front end of his truck entered the intersection he saw the Plymouth automobile coming slowly into the intersection on through the light in the north lane of eastbound traffic; that he put on the brakes of his truck and hit the Plymouth car on the right side about the center. At that time the Plymouth car was past the center of the intersection. He is substantially corroborated in his testimony by the two other occupants of his cab, Arthur Wilson and Calvin McGraw, Jr-
“Mr. W. L. Brooks, an employee of the Coca-Cola Company in its service department, stated that he was in his jeep automobile in the south lane of traffic headed east on Louisville at the time of the accident. He was stopped waiting for the traffic light; that while he was stopped the Plymouth came slowly by him into the intersection; that it looked to him like she was going to stop but she didn’t and at the same time he saw the Coca-Cola truck coming and that he intended to wave at the driver but he could not attract the driver’s attention because the driver was watching the traffic light. Mr. Brooks further testified that there was nothing to prevent the driver of the Coca-Cola truck from seeing the Simmons car from approximately a block down the street; that the truck driver did not look west on Louisville but kept his eyes entirely on the light as he entered the intersection.
“Mr. Dale Meachum stated that he had been personally acquainted with Mr. *157 Jerry A. Adams, the driver of the truck, for approximately eight to ten years prior to the accident; that he was proceeding east on Louisville in the south lane of traffic behind the jeep driven by Mr. Brooks. He stated that as he moved toward the light Mrs. Simmons’ car was either stopped or moving very slowly and that he saw her pull through the light into the intersection and at that time the traffic light on Louisville was red; that as she entered the intersection he saw the Coca-Cola truck coming and that the truck driver applied his brakes a short time before he struck the Plymouth automobile. Mr. Meachum further testified that when the accident happened that Mr. Brooks was in the process of making a right turn into Walnut Street.
“The testimony indicated that on the southwest corner of the intersection of Louisville Avenue and Walnut Street is a large Pan Am filling station; that approximately 70 feet west of the west curb of Walnut Street and approximately 70 feet south of the south curb of Louisville Avenue is the filling station building. Facing the Louisville side of the filling station are two sets of pumps separated by a space wide enough to accommodate an automobile. On the Walnut Street side back from the curb is also a set of gasoline pumps. The entire station is open, giving good visibility to traffic proceeding north on Walnut Street to eastbound traffic on Louisville proceeding toward the intersection. There is also good visibility for eastbound traffic on Louisville in the direction of Walnut Street.
“Mr. Harvey A. Crowell, an employee of the station, stated that at the time of the accident that he was filling a car with gasoline at the east end pump on the Louisville side and had his back toward the intersection; that he heard the crash and turned and looked and the traffic light was red on Louisville Avenue. He further stated that due to the fact that he was busy attending to his customer, that he did not go into the intersection.
“From all the testimony given by the witnesses, it is difficult for the Court to see how the witnesses on the back seats of the Simmons automobile and the Wilson automobile could have seen the traffic light. The plaintiff, Mrs. Nora Bryant * * * stated that during the week preceding the trial that all the parties in her car drove to the intersection and observed the traffic light; that in their car on this occasion was Mrs. Cora Simmons, Mrs. Ila Simmons and the plaintiff. The only way the Court can reconcile the testimony is that Mrs. Ila Simmons must have driven into the intersection just before the light turned green on Louisville Avenue; that she ‘jumped the gun’ so to speak. This is indicated by the fact that the Ford behind her failed to follow her into the intersection. The light was green for Jerry A. Adams as he proceeded toward the intersection but evidently changed while the Plymouth car was in the intersection. This accounts for the fact that Mrs. Traweek was able to proceed through the intersection at North Second Street and also Walnut Street without having to stop for a traffic light at either intersection. Therefore, the Court is of the opinion that Mrs. Ila Simmons was negligent in proceeding into the intersection at the time that she did. According to the statement of Mr. Jerry A. Adams, as he approached the intersection he looked neither to the right nor to the left, keeping his eyes fixed on the traffic light.”
íf« >|C ^ ‡ * *
“The Court is of the opinion that Mr. Jerry A. Adams, the driver of the Coca-Cola truck, could have seen the Plymouth car had he looked to his left; that inasmuch as she had proceeded across the intersection and was in its eastern portion at the time of the impact, that Jerry A. Adams had ample opportunity in which to stop and avoid the accident had he been keeping a proper lookout. Therefore, the Court is of the opinion that he also is negligent. The proximate cause of the accident was the negligence of both drivers.”
*158 # * * * ijí *
“Immediately after the accident the plaintiff was taken to the St. Francis Hospital. Dr. A. B. Gregory, Jr. testified that he examined her a short while before 8:00 o’clock on the morning of August 13, which was immediately after the accident. At that time she was complaining of a fair amount of primary shock and pain in the left side and left shoulder and.also pain in her head. She was X-rayed by Dr. Breland, the X-ray revealing no .fracture of the right shoulder. There was a linear fracture in the axillary line of the sixth rib without displacement. There was a marked tenderness over the left chest and left shoulder. She remained in the hospital from the date of the accident on August 13, 1956, until August 26, 1956, when she was discharged from the hospital. The doctor examined her on August 31 and on September 7 and stated that on his examination of the plaintiff on September 7, 1956, she complained of some pain in her left shoulder but generally her condition appeared to be good. The doctor stated that when he examined the plaintiff on the 7th of September that her symptoms were lessening to a degree that the doctor assumed that she would recover completely in time.
“On January 4, 1957, the plaintiff was examined by Dr. F. Cannon. Dr. Cannon stated at that time that the plaintiff complained of intermittent pain of a short duration extending from the side of her head across the other side and that there had been no improvement since the aching began. She also complained of an intermittent pain involving the right shoulder which would extend up along the muscles of her right side of her neck to the head and also of an occasional mild pain involving the upper portion of the chest area. The X-rays revealed a healed un-displaced fracture of the fifth rib on the left side and an old fracture of the second and third ribs on the left side in axillary line and that the fifth rib injury was of recent origin. The doctor stated that he did not consider the patient completely well at the time of his examination but that he did feel that eventually she would have a complete recovery from the effects of that particular accident and that his estimate of her complete recovery would be three or four months from the date of the examination. His report was filed in evidence.”
ifi j|i ;■< ijc
“In this case the Court feels that $3,500.00 would be an adequate compensation for plaintiff’s injuries, pain and suffering. In addition thereto, there is a hospital bill to the St. Francis Hospital in the amount of $225.00 and Dr. Gregory’s bill of $90.00, making a total of $3,815.00.”
We now turn to the several issues raised in the appeal. First, we observe the plea of res ipsa loquitur sought to be invoked by plaintiff is not seriously urged before this court and since a full disclosure of the manner in which the accident occurred was given upon the trial of the case, the plea is not important. We desire to note, however, that Mrs. Nora Bryant was seated to the right of Mrs. Simmons, the driver of one of the vehicles involved in the collision, and from her position plaintiff was afforded an opportunity to observe all relevant factors leading up to and causing the collision. The doctrine would, therefore, seem to be wholly without application in the instant case.
Likewise, we think the special plea of contributory negligence relied upon by defendants Roy Simmons and Allstate Insurance Company is without merit. The plea charges Mrs. Bryant with independent contributory negligence “in not seeing the northbound truck and executing a responsibility of assisting the operator of the vehicle in which she was riding, in maintaining a proper lookout for other vehicles.” The pleaders imply that a duty rested upon Mrs. Nora Bryant to warn Mrs. Simmons of the approach of the Coca-Cola truck. The legal principle applicable to the contention here made is aptly stated in the case of *159 Herget v. Saucier, 1953, 223 La. 938, 67 So.2d 543, 545, to the effect:
“Generally, a guest passenger is not required to keep a constant lookout for the dangers of the highway, or to pay attention to the ordinary road and other traffic conditions incident to automobile driving, it being his right and privilege to place reasonable reliance upon the driver in charge of the car for the exercise of the necessary care and caution. Of course, if he is aware of a danger ahead which apparently is unknown to the driver, or if he observes that such driver is incompetent or otherwise unfit to operate the machine, a duty devolves upon him to take some precautionary action. White v. State Farm Mutual Automobile Insurance Co., 222 La. 994, 64 So.2d 245, [42 A.L.R.2d 338] (and authorities cited in both majority and dissenting opinions thereof).”
The facts do not disclose Mrs. Bryant was cognizant of any danger before the collision in which she was injured, or that she was aware of a danger unknown to Mrs. Simmons. In the absence of positive evidence to the contrary, it can be assumed, we think, that a woman of eighty years will rely upon the driver in charge of the vehicle in which she happens to be a guest passenger. The plea must be denied.
We have carefully examined the testimony of some fourteen witnesses who testified as to which of the drivers moved into the intersection upon a favorable signal light. It is hopelessly conflicting with approximately one-half saying the light favored Mrs. Simmons and the other half equally positive the green faced the Coca-Cola Company truck. We cannot, under the circumstances, find error in the trial judge’s finding that Mrs. Simmons “jumped the gun” and entered the intersection on a red light.
Nor can we disagree with the conclusion of the judge a quo that Adams should have seen Mrs. Simmons as she entered the intersection upon a red light. Instead of being alert and observant, Adams was concentrating his attention on the light. While he was so engaged Mrs. Simmons was well into the intersection before he looked and attempted to control the forward progress of the truck. Further evidence that Adams was not watchful for the movement of other vehicles is found in the testimony of W. L. Brooks which is to the effect that when Mrs. Simmons did not stop, Brooks intended to wave at Adams but could not attract the attention of the truck driver because the latter was watching the traffic light. If the light was green toward him as Adams so testified, the thought comes to mind that he did not need to pay further attention to the color of the light. Another bit of relevant evidence is the speed of the truck as it approached and entered the intersection. At its proven speed of fifteen miles per hour it was under complete control and subject to a quick stop within a short distance. The effect of the foregoing evidence is to find the negligence of Adams has been proven to our satisfaction.
We have often held the findings of a trial judge upon questions of fact are entitled to great weight and accordingly when only issues of fact are involved, it is incumbent upon the appellants, in order to secure a reversal of the decision from which they have appealed, to show that the judgment complained of is manifestly erroneous, and this they have failed to do. Guillory v. Fontenot, 1930, 170 La. 345, 127 So. 746; Kruse v. Kruse, 1932, 175 La. 206, 143 So. 50; Wagner v. Shannon, 1934, 180 La. 233, 156 So. 289; Lejeune v. Lejeune, 1937, 187 La. 339, 174 So. 643; Falgout v. Johnson, 1939, 191 La. 823, 186 So. 349; Thornton v. Ellington, 1946, 209 La. 613, 25 So.2d 282; Currie v. Government Employees Insurance Company, La.App. 1956, 90 So.2d 482, 486.
Counsel for appellants Ouachita Coca-Cola Bottling Company, Inc., and American *160 Employers Insurance Company, in their brief refer to a number of authorities, mostly delineating the responsibility of a motorist who is proceeding into an intersection with a favored light, or traveling with a superior right of way. Cited are the followng cases: Mason v. Price, La.App.1947, 32 So.2d 853; New Hampshire Fire Insurance Company v. Bush, La.App.1953, 68 So.2d 254; Commercial Credit Corporation v. Serpas, La.App.1957, 94 So.2d 83; White v. Travelers Insurance Company, La.App.1957, 94 So.2d 564. The brief on behalf of appellants Roy Simmons and Allstate Insurance Company invites our consideration of Mejheardt v. Reboul, La.App.1935, 158 So. 235 and Stevenson v. Williams, La.App.1954, 76 So.2d 345.
Duree v. State, La.App.1957, 96 So.2d 854 is the only one of these authorities involving the rights of a guest passenger. In guest cases, in the absence of contributory negligence by the guest, either or both of the motorists in a collision may be held legally responsible as a joint tort feasor. The plaintiff therein is concerned with establishing actionable negligence of either driver and has no interest in championing the cause of one motorist against the other. In Duree v. State, however, there was only one defendant and the case is for this reason inapposite.
The facts of Currie v. Government Employees Insurance Company, La.App.1956, 90 So.2d 482 appear more analogous. Therein this court, in an action by a guest passenger of one of two vehicles involved in an intersectional collision, held that as neither motorist observed the other in time to avoid a collision, although the intersection was clear and neither was speeding, the evidence established that both drivers were negligent through failure to maintain a proper lookout despite contradictory testimony of each that the semaphore signal light was in his favor.
Mason v. Price, New Hampshire Fire Insurance Company v. Bush, Commercial Credit Corporation v. Serpas, White v. Travelers Insurance Company, Mejheardt v. Reboul, and Stevenson v. Williams, all cited above, stand for the well established legal principle that the superior vehicle (so described because it is traveling on a favored street or facing a favorable color from a traffic signal light) shall not proceed without regard to traffic conditions in reliance upon the right of way to absolve the vehicle from all responsibility, and when a collision with a vehicle approachng the intersection on the less favored street appears imminent, such awe must be exercised by the driver of the superior vehicle as is consistent with the danger regardless of the right of zvay. In some of the appellate decisions of this state, it is said the driver of the superior vehicle should not be held to the same degree of care, as if no system of traffic control existed. Other cases hold that a motorist proceeding with the green light is not negligent in failng to keep a watch out for those who might enter the intersection from the unfavored direction and was not required to anticipate that others would, in violation of law, enter the intersection on an unfavorable light. The general principles are affected by the peculiar facts found to exist in each case. Certainly, we think, the driver of the superior vehicle may not blindly exercise his right of way when by ordinary care he could avoid a possible catastrophe.
The plaintiff, desiring to have the quantum raised, has answered the appeal, requesting this court to increase the judgment to $5,000. We, therefore, deem it proper to consider the extent and effect of the injuries suffered by Mrs. Bryant. The judge a quo has in our opinion, accurately reported the medical findings as to which there is no serious dispute, and he has properly noted her complaints. The examining doctors anticipated a full recovery with little, if any, residual pain and inconvenience. She was expected to experience some pain and nervousness for three or four months after the trial, which took place during the latter part of October, *161 1957, some fifteen months after the accident. Dr. Gregory treated Mrs. Bryant from the time of her injury, during the two weeks period she remained in the hospital, and observed her after she was returned home. He was afforded a better opportunity to appraise the effect of the accident upon Mrs. Bryant’s physical condition than any of the other physicians who had occasion to observe her for short intervals only. When asked as to the changes in her physical condition which he noticed during his examinations, and the period of hospitalization, he testified:
“Well, there were complications here, not due to the accident more or less but which necessitated longer period of hospitalization. Mrs. Nora Bryant had what we call an auricular fibrillation of her heart and because of that condition and because that severe chest injuries can produce changes within the heart itself, she was kept under observation for a longer period of time than she would ordinarily have been, particularly in the hospital.”
The same witness testified he expected a complete recovery of the patient and that at the time he last observed Mrs. Bryant she had no difficulty in getting around and doing ordinary things. Of course, plaintiff’s age is a factor which complicates the problem of a separate evaluation of the injuries produced by the trauma. In order to assess damages for personal injuries, proof thereof should be established to a legal certainty. Our review and analysis of the evidence and testimony relating to plaintiff’s physical condition following the accident has brought us to the conclusion the award as made by the district judge is neither excessive nor inadequate.
Counsel for the appellee urges this court to fix the expert fees at $50 each in lieu of the sum of $25 as fixed by the judgment from which appealed. The record shows there were four medical expert witnesses, each of whom had occasion to examine plaintiff and subsequently give ex-pert testimony in the case. The request of counsel is proper and should be allowed. See: Valentine v. Southern Advance Bag & Paper Co., Inc., La.App.1945, 20 So.2d 814, 816; Bethley v. Cochrane, La.App.1955, 77 So.2d 228, 232; Henderson v. New Amsterdam Casualty Co., La.App.1955, 80 So.2d 438; Radecker v. Blue Plate Foods, Inc., La.App.1955, 80 So.2d 875; Bickham v. Lester J. Danner, Inc., La.App.1956, 86 So.2d 564, 569; Wilson v. New Amsterdam Casualty Co., La.App.1956, 86 So.2d 556, 559; and O’Connor v. American Mutual Liability Insurance Co., La.App.1956, 87 So.2d 16, 25.
As a result of our findings as herein-above set forth, we find no error in the judgment from which appealed. However, we are of the opinion the decree should be so amended as to increase the fees of the medical experts who gave testimony in the case, to $50 each. As so amended, the judgment from which appealed is affirmed at the costs of appellants.